**I UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT MENENDEZ, NADINE MENENDEZ, WAEL HANA, JOSE URIBE, and FRED DAIBES,<br><br>           Defendants | Case No. 1:23-cr-490 (SHS) |

## DEFENDANT NADINE MENENDEZ'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO SEVER DEFENDANTS FOR TRIAL

Severance is necessary to protect each of the competing, yet fundamental, trial rights of Senator Menendez and Nadine Menendez: (1) the fundamental right to testify on their own behalf, (2) the "time-honored evidentiary privilege" to refuse to testify adversely to their spouses, (3) and the right to assert privilege over confidential marital communications. *See United States v. Pineda-Mateo*, 905 F.3d 13, 26 (1st Cir. 2018).

In its opposition, the government asks this Court to ignore the fact that a joint trial will infringe upon significant rights and privileges that the Menendez's possess. The government is wrong to suggest that a spouse in a joint trial must make the choice to assert one right or privilege even if it means eviscerating another (e.g., waiving the Fifth Amendment right to testify in order to preserve the privilege against providing adverse spousal testimony). That is because one spouse's decision necessarily implicates the rights and privileges for the other spouse.

Faced with a joint trial, Defendants Nadine Menendez and Senator Menendez are presented with two options in the current case: (1) choose to exercise their right to testify on their own behalf and necessarily waive their privilege not to testify against their spouse; or (2) choose not to testify

1

against their spouse but thereby forego their right to testify on their own behalf. This choice is further complicated by the irreconcilable conflict between husband and wife with respect to the admissibility of confidential marital communications. Forcing a defendant into a "Catch-22," to choose one form of legal protection at the expense of the another, is inconsistent with the fundamental notion of a fair trial.

Each defendant has an absolute constitutional right to testify in his or her own defense at trial. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). To the extent that Senator Menendez intends to exercise his right to testify to demonstrate that he lacked the knowledge and intent required for conviction of the crimes with which he has been charged, Ms. Menendez maintains her right to assert, and intends to assert, privilege as to her confidential marital communications. Thus, at a joint trial of Senator Menendez and Ms. Menendez, the Court would be presented with an irreconcilable conflict between husband and wife with respect to the admissibility of confidential marital communications. Moreover, under *Trammel v. United States*, Senator Menendez and Nadine Menendez have a "time-honored evidentiary privilege" to refuse to testify adversely to each other. 445 U.S. 40, 53 (1980); *see United States v. Pineda-Mateo*, 905 F.3d 13, 26 (1st Cir. 2018). In the circumstances here, where Ms. Menendez has been indicted jointly with Senator Menendez, their constitutional right to testify in their own defense and their privilege to refuse to testify adversely against each other stand in irreconcilable conflict.

Under these circumstances, the government's preference to preserve resources is not the most paramount consideration for the Court. The Court must consider the harm that would result in a single trial and should have two trials to protect and enforce the Menendez's rights and privileges. That is especially true when the dilemma facing these Defendants can be easily resolved by a severance pursuant to Federal Rule of Criminal Procedure 14. The United States

Court of Appeals for the Third Circuit has recognized this fact and suggested that District Courts should resolve this very problem by severing the trials of spouses in these circumstances. *United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019)[1].

In the government's opposition it incorrectly suggests that there is "very likely little—if any—admissible testimony that [Senator Menendez] might potentially offer that would be protected by the privilege." Gov't Opp. at 119. The government suggests that a significant portion of the charged conduct predates their marriage. While the Indictment does allege that Senator Menendez and Ms. Menendez entered into a bribery scheme during the infancy of their romantic relationship, numerous and significant allegations post-date their marriage. Indeed, a recent allegation suggests that Senator Menendez and Ms. Menendez obstructed justice in December of 2022, two-years after they were married. Those allegations have been included in the latest iteration of the Indictment.

The government also speculates that the confidential marital communications that Senator Menendez may wish to testify about would be admissible over Ms. Menendez's objection because they were in furtherance of the charged joint conduct and are therefore "likely admissible under the joint-crime exception to the marital communications privilege." Gov't Opp. at 120. However, Courts should be "concerned with the actual participation by both spouses in a crime, not with their joint prosecution for that crime." *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990). The government's indictment is not enough to make the case that the joint crime exception applies.

---

[1] The government argues that *Blunt* is distinguishable because it involved testimony regarding a defense of duress. Gov't Opp. at 123-124. While the court regarded the prejudice to the husband by the wife's testimony of duress as a factor in reversing the denial of the husband's motion to sever, the court was clear that as to the wife's motion to sever, it "reverse[d] the District Court's decision denying Blunt's Severance Motion ***solely*** on the ground that Blunt should be given the opportunity to exercise her spousal privilege without being forced to choose between said exercise and testifying in her own defense." *Blunt*, 930 F.3d at 127 (emphasis added).

In most cases where courts have found that the joint crime exception precludes the assertion of the marital privilege for confidential communications, the one spouse has chosen to cooperate with the government against the other spouse.  In other cases, a spouse revealed complicity in statements to third parties.  *See e.g. United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir. 1998) (a wife presumably cooperated with the government pre-indictment as she was categorized by the government as an "unindicted coconspirator" and testified at her defendant husband's trial); *United States v. Price*, 577 F.2d 1356, 1358 (9th Cir. 1978) (where the government had a recorded conversation between the defendant wife and two third party cooperators implicating her knowledge of her defendant husband's illegal business.).  Unlike the cases where the joint crime exception has applied, neither spouse has admitted complicity in this case.

Even if the Court were to find that the confidential marital communications privilege did not apply to any particular communication(s) between Senator Menendez and Ms. Menendez, severance is still warranted pursuant to the adverse spousal testimonial privilege.  In *Trammel*, the United States Supreme Court affirmed the vitality of the adverse spousal testimonial privilege when a spouse-witness elects to exercise it.  Were the Court to do as the government requests and ignore Senator Menendez and Ms. Menendez' privilege to not testify against their spouse, it would have the effect of abrogating the adverse spousal testimonial privilege.  To demand that a spouse "choose" whether to testify in one's own defense at a joint trial, even if a "choice" to do so would entail testifying adversely against one's spouse, goes against the grain of the holding in *Trammel*: an individual "may neither be compelled to testify nor foreclosed from testifying" against their spouse. 445 U.S. at 52.

The government cites to *United States v. Sasso*, 78 F.R.D. 292 (S.D.N.Y. 1977), for the proposition that a defendant spouse is not entitled to a severance merely because she wishes to

4

exercise her privilege not to testify against her husband. *Sasso* was decided three years before the Supreme Court addressed the adverse spousal testimonial privilege in *Trammel*. Moreover, the court in Sasso noted that "[a] different problem will be presented if Mrs. Sasso ultimately decides to testify against her husband, and he then asserts a valid claim of privilege in order to prevent her from offering testimony adverse to him." *Sasso*, 78 F.R.D. at 295. Ultimately, the court denied the motion to sever because she had not demonstrated that such testimony would be forthcoming.

Here, Senator Menendez and Ms. Menendez have established this precise issue will arise if the defendants are tried together. *See United States v. Ammar*, 714 F.2d 238, 257 (3d Cir. 1983) (recognizing the inherent conflict that arises when one spouse exercises the right to testify on his or her behalf and the spousal defendant wishes to assert the marital communications privilege and advising that "severance may be granted for a co-defendant spouse, if necessary to protect his or her rights.") citing *United States v. Fields*, 458 F.2d 1194, 1198-99 (3d Cir. 1972), cert. denied, 412 U.S. 927 (1973).

The sanctity of Senator Menendez and Ms. Menendez' marriage is important to them and their privilege to not testify against a spouse in a joint trial must be honored, as must their right to exclude confidential marital communications. Thus, the most prudent and protective path is to sever co-defendant spouses in this case.

Finally, the government argues in its opposition that Senator Menendez and Ms. Menendez's motions should fail because their statements about their testimonial intentions are not sufficiently detailed or unequivocal. Gov't Opp. at 115. We disagree. The *ex parte* submissions are sufficient. The government is not entitled to prospective defense testimony. Revealing defense trial strategy would be unfairly prejudicial to defendants.

5

Moreover, it is simply unreasonable for the defendants to submit declarations under oath, with details beyond what has already been submitted to the Court, given the status of the evidence in the case. Although the government was ordered to substantially complete discovery by December 5, 2023, the government has continued to make voluminous discovery productions well past its deadline. Just last week, the government produced an additional 30,000 pages of discovery, which counsel and Ms. Menendez have yet to review. It would be irresponsible to file a declaration on a defendant's unequivocal intent to testify when the government has yet to complete discovery or provide Jencks Act materials, and the parties have yet to begin the CIPA process.

Thus, the Court should not require defendants to commit to certain testimony, beyond what they have already submitted. *See United States v. Thoresen*, 281 F. Supp. 598, 602 (N.D. Cal. 1967) (acknowledging in a case involving the marital privilege that "to grant the motion for separate trials involves certain speculation: speculation that one or both of the defendants will choose to testify..."); *see also United States v. Tham*, 960 F.2d 1391, 1396 (9th Cir. 1991) (noting that in a typical co-defendant severance case, the eventuality that a co-defendant will furnish exculpatory testimony "need not be a certainty."). Accordingly, defendants have provided sufficient information in their *ex parte* submissions to demonstrate that severance is required in order to protect their fundamental rights and privileges.

## CONCLUSION

For the foregoing reasons and any others that appear to the Court, Ms. Menendez's trial should be severed from Senator Menendez under Federal Rule of Criminal Procedure 14(a).

February 12, 2024

Respectfully Submitted,

/s/ Danny Onorato
David Schertler, Esq.
Danny Onorato, Esq.
Paola Pinto, Esq.
Schertler Onorato Mead & Sears
555 13th Street, NW, Suite 500 West
Washington, DC  20004
202-628-4199, Facsimile:  202-628-4177
dschertler@schertlerlaw.com

*Counsel for Defendant Nadine Menendez*