

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 8, 2025

**BY EMAIL AND ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

>    Re:    ***United States v. Nadine Menendez,***
>           **S4 23 Cr. 490 (SHS)**

Dear Judge Stein:

The Government respectfully writes in the above-captioned matter in response to the defendant's January 7, 2025 sealed and unsealed letters requesting a "two to three month[]" adjournment of trial, which is scheduled to commence in less than a month, as well as a pretrial conference to address stipulations with the Court. (*See* Dkt. 684 ("Unsealed Ltr.") at 1, 2).

As to the request for an adjournment, the defendant's unsealed letter raises a concern with the January 29, 2025 sentencings of her three co-defendants, claiming that "it likely would not be possible" to select a jury that is not influenced by expected publicity related to the sentencings. (Unsealed Ltr. at 1.)  But *voir dire* will commence one week *after* the sentencings, and therefore all potential jurors can be questioned about what publicity they are aware of, if any, and how, if at all, it affects their ability to be fair and impartial jurors.[1]  Based on the responses, the Court can strike potential jurors for cause or the parties can exercise peremptory challenges.  Given these protections—which have ensured impartial juries in numerous cases with extensive media coverage, including the first trial in this matter—there is no reason to adjourn trial on this basis. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 386 (2010) ("When pretrial publicity is at issue, 'primary reliance on the judgment of the trial court makes [especially] good sense' because the

---

[1] Similar *voir dire* questions were used at the first trial, given the publicity that had accompanied the charges and pretrial proceedings.  The Government notes that it opposes certain of the supplemental *voir dire* questions proposed by the defendant (Dkt. 679), many of which are intrusive, improper, and/or appear to take a position on disputed or irrelevant factual matters.

Honorable Sidney H. Stein
January 8, 2025
Page 2

judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.'" (internal citation omitted); *id.* at n.21 (noting "other measures [that] were used to mitigate the adverse effects of publicity" including peremptory challenges and "emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court." (internal citation omitted); *United States v. Tsarnaev*, 595 U.S. 302, 314 (2022) (in Boston marathon bombing case, finding district court's *voir dire* process "reasonable and well within its discretion"); *United States v. Salim*, 189 F. Supp. 2d 93, 97 (S.D.N.Y. 2002) ("In questioning potential jurors, it is not the fact that they may have been personally affected by the events of September 11, 2001 that is dispositive; it is their sworn response whether that connection makes it difficult for them to be fair and impartial jurors for the parties in this case. Precautions can function to assure the selection of an unbiased jury. Specifically, careful voir dire questioning on this topic, accompanied by the assembling of a jury pool significantly larger than the normal size, will be sufficient in detecting and eliminating any prospective jurors prejudiced by their personal connection to September 11, 2001.").

The defendant's sealed letter argues for an adjournment



On this record, there is no basis to revisit the Court's prior decision. However, if the Court is inclined to grant the adjournment request for medical reasons, or has questions regarding the basis for the motion, the Government requests that the Court promptly hold a conference with the parties to discuss any potential new trial date so as to ensure as little delay as possible.

The defendant also requests that the Court schedule a conference to address the "large number of stipulations" the Government has proposed. (Unsealed Ltr. at 2.) As in the first trial, there is expected to be a large amount of documentary evidence, and the Government has strived to make presentation of that evidence to the jury as efficient as possible, including through stipulations.[2] As previously described to the Court (Dkt. 681 at n.1), between December 18 and December 27, 2024, the Government sent the defendant all of the stipulations it currently proposes for its case-in-chief, as well as all of the underlying exhibits for the highest-priority stipulations, *i.e.*, those that, if not signed, would require the largest number and/or length of witnesses. This process has resulted in the defendant having received several hundred exhibits almost six weeks

---

[2] In the spirit of streamlining the trial, the Government has also suggested several testimonial stipulations that would obviate the need to call multiple witnesses who testified at the first trial; in these cases, the Government sent both the stipulation and the witness's testimony to the defendant as a courtesy to aid review and consideration of the stipulations.

Honorable Sidney H. Stein
January 8, 2025
Page 3

before the trial is scheduled to start.[3]  Moreover, nearly identical stipulations covering nearly identical exhibits were also reviewed by able defense counsel, including counsel for the defendant's husband, and agreed to, over six months ago.  The Government sent a full set of those stipulations to the defendant on November 22, 2024, in the unlikely event she did not already have access to them, notwithstanding that they were admitted into evidence and thus are public documents.

However, in the several weeks since the Government sent the stipulations—most of which relate only to the authenticity of documents—the defendant has provided a concrete response only on one, which she indicated she does not agree to, and more recently expressed concern about the large number of documents that certain of the stipulations cover—which is of course exactly why stipulations would make for a more efficient trial.  Here, the defendant, who did not confer with the Government prior to filing her letter seeking a conference to discuss the proposed stipulations, has the benefit of substantially more time to review stipulations and documents than did counsel in the prior trial.  To be sure, she has a right to decline to enter into stipulations, in which case the Government will be prepared to call numerous additional witnesses, which will materially lengthen the trial.  But it is unclear how a conference would be helpful with respect to stipulations, since the decision whether to enter into stipulations is ultimately a decision for her, which—if she chooses to do so—she can readily do on the current schedule just as counsel for her co-defendants did for a similar volume of exhibits on a much shorter schedule.  Nonetheless, if the Court is interested in receiving more detailed information about the proposed stipulations or the status of the parties' discussions about them, the Government of course has no objection to a conference.

Respectfully submitted,

MATTHEW PODOLSKY
Chief Counsel to the Acting United States Attorney
Attorney for the United States, Acting under
Authority Conferred by 28 U.S.C. § 515

By:    s/ Catherine Ghosh
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine Ghosh
Assistant United States Attorneys
(212) 637-2109/2219/2343/1114

cc:    (by ECF)

Counsel of Record

---

[3] The Government has also indicated it may send additional exhibits, prior to the exhibit disclosure deadline, should the parties make headway on stipulations.