UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

NADINE MENENDEZ,

              Defendant.

(S4) 23-Cr-490 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    The question before the Court is whether defendant's proposed expert is qualified by "knowledge, skill, experience, training, or education" (Fed. R. Evid. 702) to give her opinion on how Middle Eastern cultures "treat and regard gifts of things of value between friends and business associates." (Expert Witness Notice, ECF No. 704-1 at 2.) The Court finds that she is not so qualified under Federal Rule of Evidence 702; that defendant's expert notice is deficient under Federal Rule of Criminal Procedure 16(b)(1)(C)(iii); and that Federal Rule of Evidence 403 warrants preclusion.

**I. DEFENDANT'S PROPOSED EXPERT IS NOT QUALIFIED TO RENDER HER PROFFERED OPINION PURSUANT TO FEDERAL RULE OF EVIDENCE 702.**

    Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

    In essence, "[a]n expert may be permitted to testify if he or she 'is qualified, reliable, and helpful.'" *United States v. Kaufman*, No. 19-cr-504, 2021 WL 4084523, at *18 (S.D.N.Y. Sept. 8, 2021) (quoting *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021)), *aff'd*, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023).

1

...
...

"The Rule 702 inquiry is a flexible one that depends upon the particular circumstances of the particular case at issue." *United States v. Chastain*, No. 22-cr-305, 2023 WL 2966643, at *5 (S.D.N.Y. Apr. 17, 2023) (quotation marks and citation omitted). "Such flexibility is necessary in the case of expert testimony based on 'soft' social sciences." *E.E.O.C. v. Bloomberg L.P.*, No. 07-cv-8383, 2010 WL 3466370, at *13 (S.D.N.Y. Aug. 31, 2010). Nevertheless, "[t]he Court exercises a 'gatekeeper function' in assessing the admissibility of expert testimony." *United States v. Maxwell*, No. 20-cr-330, 2021 WL 5283951, at *1 (S.D.N.Y. Nov. 11, 2021) (citing *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017)); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). This "gatekeeper" function performed by the Court applies to all expert testimony, even that arising from the social sciences, in order to ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999).

"The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are met." *United States v. Kwok*, No. 23-cr-118, 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024) (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). Defendant has failed to meet her burden here.

### A. Salamandra Is Not Qualified to Give the Proffered Expert Testimony.

Defendant seeks to introduce testimony pursuant to Rule 702 from Christa Salamandra, a professor of anthropology at Lehman College of the City University of New York. Her opinion is on "how Middle Eastern cultures—in particular, the Lebanese and Armenian cultures where Ms. Menendez's family has its roots—treat and regard gifts of things of value between friends and business associates." (ECF No. 704-1 at 2.) Salamandra is not qualified to give such testimony.

"'[W]hether a purported expert is qualified under Rule 702 is an inquiry to be resolved prior to all others.'" *United States v. Boone*, No. 23-cr-427, 2024 WL 2160230, at *5 (S.D.N.Y. May 13, 2024) (quoting *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015)). The question of qualification "'depends on [the witness's] educational background, training, and experience in the field(s) relevant to the opinions he or she seeks to give.'" *Id.* (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013)).

Defendant's expert notice states that Salamandra is "an expert in Middle Eastern cultures and has lived, worked, and conducted ethnographic research in Beirut" and attaches Salamandra's curriculum vitae ("CV"). (ECF No. 704-1.) Nothing in this single statement nor anything in her CV qualifies Salamandra as an expert capable of opining on gift-giving among Lebanese and Armenian cultures—much less on the culture of

2

individuals with Middle Eastern roots who have lived in the United States for decades, as defendant has.

To be sure, Salamandra's credentials are impressive: she has a doctorate from the University of Oxford in social and cultural anthropology, she is currently a Professor and Deputy Chair of the Department of Anthropology at Lehman College, and she has co-edited two books, written numerous articles, and given many conference presentations. (ECF No. 704-1 at 5-28.) A review of Salamandra's CV, however, reveals that her scholarship overwhelmingly focuses on popular culture in Syria and specifically, Syrian television. (*See, e.g.*, *id.* (listing titles of Salamandra's scholarship, including "Waiting for Light: Syrian Television Drama Production in the Satellite Era"; "Spotlight on the Bashar al-Asad Era: The Television Drama Outpouring"; "Creative Compromise: Syrian Television Makers between Secularism and Islamism"; and "Ambivalent Islam: Religion in Syrian Television Drama"). Indeed, 10 of her 12 peer-reviewed articles concern either Syria, television, or both. (*See id.*) Not a single article, presentation, book, or chapter states that it analyzes or even discusses gift-giving practices and there is no indication that Salamandra has conducted any research of any kind concerning gift-giving in Middle Eastern cultures.[1]

There is no mention of Armenia in Salamandra's CV and living in Beirut for two years and conducting ethnographic research while there—on an undisclosed topic—is not enough to render her an expert on "how Middle Eastern cultures—in particular, the Lebanese and Armenian cultures where Ms. Menendez's family has its roots—treat and regard gifts of things of value between friends and business associates." (ECF No. 704-1 at 2.) *See also United States v. Boyajian*, No. CR 09-933(A), 2013 WL 4189649, at *15 (C.D. Cal. Aug. 14, 2013). Notably, academic institutions describe Salamandra as a "Syrian media specialist." *Christa Salamandra*, Roosevelt House Public Policy Institute at Hunter College, https://www.roosevelthouse.hunter.cuny.edu/?conference-speaker=christa-salamandra [https://perma.cc/NE3L-2287] (last visited Feb. 18, 2025); *Christa Salamandra*, Center for the Humanities, CUNY Graduate Center, https://centerforthehumanities.org/person/christa-salamandra/ [https://perma.cc/3CDH-824H] (last visited Feb. 18, 2025). On her own website, Salamandra describes herself as an anthropologist who "specializes in Arabic language fictional media." *Dr. Christa*

---

[1] In opposition to the government's motion, the defense points out that Salamandra has authored a chapter in the book "Handbook of Media and Culture in the Middle East." (ECF No. 725 at 4.) Counsel omits the fact that that chapter is titled "Aesthetic Arabism: The Syrian *Musalsal* Beyond Borders." (ECF No. 704-1 at 7.) A musalsal is "an Arab television drama or Arab soap opera." *Arab Television Drama*, Wikipedia, https://en.wikipedia.org/wiki/Arab_television_drama#cite_note-nyt-iton-1 [https://perma.cc/APM2-VJDA] (last visited Feb. 18, 2025) (citing Sharon Waxman, *Ideas & Trends: Ramadan Nights*, N.Y. Times (Nov. 23, 2003), https://www.nytimes.com/2003/11/23/weekinreview/ideas-trends-ramadan-nights-traditions-old-fasting-and-new-soap-operas.html).

3

*Salamandra*, http://www.christasalamandra.net/ [https://perma.cc/9B4A-NTHQ] (last visited Feb. 18, 2025).

Accordingly, the Court concludes that Salamandra is not qualified to opine on how Middle Eastern cultures "treat and regard gifts of things of value between friends and business associates." (ECF No. 704-1 at 2.)

### B. Salamandra's Testimony Would Not Help the Jury.

Even if Salamandra were qualified to give the proffered expert testimony, this testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702(a) requires.

Beyond qualifications, "a trial court must consider whether the expert's testimony will assist the jury." *Boone*, 2024 WL 2160230, at *6. "Weighing whether the expert testimony assists the trier of fact goes primarily to relevance." *Alto v. Sun Pharm. Indus., Inc.*, No. 19-cv-09758, 2021 WL 4803582, at *3 (S.D.N.Y. Oct. 13, 2021) (quoting *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014)). "Relevance can be expressed as a question of 'fit'—'whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Id.* (quoting *Daubert*, 509 U.S. at 591).

"Expert testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help' should not be admitted." *Id.* (quoting *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)); *see also United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.")

Defendant has not met her burden to show that Salamandra's proposed testimony concerning gift-giving in Middle Eastern cultures is relevant or otherwise fits the facts of this case. While defendant's grandparents are apparently Armenian (Trial of Senator Menendez Tr. 5867 (hereinafter "Tr.")) and she was born in Lebanon (*id.*), defendant left the Middle East when she was approximately 11 or 12 years old. (Tr. 5868.) Since the beginning of high school, defendant has resided in the United States. (Tr. 5870.) Thus, at 57 years of age, she has not lived in the Middle East for more than 40 years.

The defense offers no sound basis for the Court to extrapolate gift-giving customs from the Middle East or, more specifically, Armenian and Lebanese cultures, to defendant. In her opposition, defendant asserts that "cultural influences . . . affect perceptions for a lifetime." (ECF No. 725 at 7.) Not only is that proposition wholly unsupported in defendant's submission, but also there is no evidence that Salamandra's

testimony would support that assertion or even account for the fact that defendant has not lived in the region for most of her life (were these even to be topics within her expertise). Assuming counsel's statement that "Ms. Menendez still has an accent, remains close to her extended family, and was heavily influenced by her early exposure to them" to be true (*id.*), this statement does not sufficiently link defendant's early childhood in Lebanon to her state of mind when she received gold bars and other high-value items some 40 years later.

    Indeed, the United States Court of Appeals for the Seventh Circuit affirmed a district court's preclusion of expert testimony by an anthropologist specializing in Ghanaian culture because, among other reasons, the anthropologist's "expertise [was] limited to the cultural practices of Ghanaian nationals living in Ghana" and there was "no basis for extrapolating [her] conclusion[s] to [the defendant], a Ghanaian expatriot" living in the United States. *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). *See also United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012); *United States v. Kaplan*, 490 F.3d 110, 120 (2d Cir. 2007) ("[E]vidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record . . . from which to conclude that the defendant would have the same knowledge.").

    This is not to say there is no place in the courts for expert testimony from anthropologists or for individuals with Salamandra's qualifications. Expert testimony concerning foreign cultures is, as defendant points out, "permitted *when relevant*." *Dongguk Univ. v. Yale Univ.*, No. 08-cv-441, 2012 WL 1977978, at *8 (D. Conn. June 1, 2012) (emphasis added); *see also Mamah*, 332 F.3d at 477 ("We acknowledge that social scientists frequently testify as experts, and their opinions are 'an integral part of many cases.'" (citation omitted)); *United States v. Wilson*, 493 F. Supp. 2d 484, 489 (E.D.N.Y. 2006). For example, in *Dongguk University*, the district judge concluded that "general cultural testimony . . . would aid the jury in understanding the cultural context in which the facts of [the] case unfolded." 2012 WL 1977978, at *8. That is simply not the case here, where nearly all of the relevant events occurred in New York, New Jersey, and Washington, D.C., and the supposed "cultural context" defendant seeks to provide dates back more than 40 years.

    Moreover, much of Salamandra's proffered testimony is commonplace. The defense proffers that Salamandra will testify that "[a] gift is an expression of affection, affinity, and respect," that "part of what makes a gift a gift is that, while some form of reciprocity is expected, it cannot be immediate or in kind," and that "[a] gift often is intended to foster trust and good will." (ECF No. 704-1 at 3.) These concepts regarding gifts and gift-giving are well within the ken of the average juror. The jury is capable of understanding what is and what is not a gift without an expert's assistance.

5

In addition, even if her testimony were otherwise admissible, Salamandra may not define or opine on legal terms for the jury. Specifically, Salamandra would not be permitted to testify that "[a] gift . . . does not necessarily connote a 'quid pro quo,'" as her counsel proposes. (*Id.*) That is a legal term and far beyond the bounds of proper expert testimony. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (noting an expert may not "communicate a legal standard—explicit or implicit—to the jury" (internal quotations and citation omitted)).

In sum, the Court precludes Salamandra's testimony pursuant to Federal Rule of Evidence 702 because she is unqualified to give the proffered testimony and because her testimony would not help the jury.

## II. DEFENDANT'S EXPERT NOTICE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 IS DEFICIENT.

The Court also precludes Salamandra's testimony on the ground that her expert notice fails to comply with Federal Rule of Criminal Procedure 16. Rule 16 requires a defendant to disclose, *inter alia*, "the bases and reasons" for "all opinions that the defendant will elicit from the [expert] witness." Fed. R. Crim. P. 16(b)(1)(C)(iii). The bases and reasons relied upon by the expert "cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion." *United States v. Weiner*, No. 22-cr-19, 2024 WL 82729, at *5 (S.D.N.Y. Jan. 8, 2024). "[A] statement of an opinion's bases and reasons cannot merely be 'the *ipse dixit* of the expert' from experience." *United States v. Kwok*, No. 23-cr-118, 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024) (quoting *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023)). Rather, "'[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.'" *Id.* (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)).

Here, defendant's expert notice under Rule 16 states simply that Salamandra "is an expert in Middle Eastern cultures and has lived, worked, and conducted ethnographic research in Beirut" and then proceeds to list the conclusions Salamandra draws from that experience. (*See* ECF No. 704-1 at 2-3.) This notice fails to explain "how [Salamandra] came to [these] conclusion[s]." *See Kwok*, 2024 WL 1773143, at *1. In response to the government's motion, defendant contends that "[c]ultural opinions," unlike scientific expert testimony, are purely "observational." (ECF No. 725 at 7.) Even assuming that to be true, the notice does not identify what observations Salamandra has made that inform or otherwise support her proffered testimony and what those observations are based on. Salamandra's CV does not explain how her research and professional experience led her to her proffered opinions concerning gift-giving. At

bottom, her proffered testimony is simply her "*ipse dixit*" conclusions based on her experiences throughout her career. That does not suffice. In Senator Menendez's trial, this Court explained that simply "putting forth [the witness's] 'experience and research' as a basis for her conclusion provides no meaningful information to the government." (Tr. 763 (precluding expert).) Salamandra's testimony is thus precluded for failing to set forth the bases and reasons for her opinions as required by Rule 16.

### III. SALAMANDRA'S TESTIMONY IS PRECLUDED PURSUANT TO FEDERAL RULE OF EVIDENCE 403.

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citation omitted); *see also* Fed. R. Evid. 403. "Indeed, the Supreme Court, echoed by members of [the Second Circuit], has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595).

The Court precludes Salamandra's testimony on this ground, as well. There is essentially no probative value to Salamandra's testimony concerning gift-giving in Middle Eastern cultures. Defendant and her family settled in the United States more than 40 years ago; her proposed expert has demonstrated no expertise in Lebanese or Armenian culture in the diaspora; and the defense has offered no evidence that defendant herself actually subscribes to the gift-giving customs about which Salamandra has proposed to testify.

Under Rule 403, the Court also weighs the risk that this evidence would confuse or mislead the jury, waste time and lengthen the trial, and be cumulative of any lay witness testimony on this issue. Accordingly, the Court precludes Salamandra's testimony under Rule 403 because the low probative value of her testimony would be substantially outweighed by a danger of confusing or misleading the jury, wasting time and lengthening the trial, and needlessly presenting cumulative evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court grants the government's motion *in limine* and precludes the testimony of Christa Salamandra pursuant to Federal Rules of Evidence 702 and 403 and Federal Rule of Criminal Procedure 16.

Dated: New York, New York
       February 19, 2025

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.