

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 5, 2025

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Nadine Menendez*,
           S4 23 Cr. 490 (SHS)

Dear Judge Stein:

    The Government respectfully writes in the above-captioned matter to provide to the Court, as directed at the February 27, 2025 conference, a list of exhibits as to which the defendant has informed the Government there is no objection to admissibility, and a list of exhibits as to which the defendant has informed the Government there is no objection concerning authenticity or foundation (*see, e.g.*, Tr., Feb. 27, 2025, at 7), as well as to advise the Court of the status of objections to the summary charts and related exhibits discussed in the Government's February 26, 2025 letter-motion (Dkt. 775).

    The Government has conferred extensively with counsel for the defendant since the February 27 conference. Since that time, the defendant: (a) has withdrawn certain objections identified in the letter-motion, (b) has added two more objections to exhibits as to which she had not previously provided her position, and (c)—at approximately 4:58 p.m. today—has conditionally rescinded her previously-provided written consent to the admissibility of over 600 exhibits. Based upon the parties' discussions to date, the list of exhibits as to which there is no objection to admissibility is attached hereto as Exhibit A, and the list of exhibits as to which there is no objection to authenticity or foundation is attached hereto as Exhibit B. The Government also attaches hereto, as Exhibit C, a list of over 600 exhibits, derived from data files processed through the Cellebrite digital forensic software, as to which counsel for the defendant previously claimed to have no objection to admissibility, but at approximately 4:58 p.m. today stated that he did not

Honorable Sidney H. Stein
March 5, 2025
Page 2

anticipate objecting to authenticity, but only expected not to object if the Government first presents testimony regarding the operation of the Cellebrite software.[1]

To facilitate the Court's disposition of the outstanding objections, including the new objections, the Government attaches hereto as Exhibit D an updated chart of objections and responses, preserving the numbering that was used in the Government's original letter-motion. For the reasons set forth in the letter-motion and herein, the defendant's objections should be overruled.

I. **The Cellebrite Exhibits**

Despite having represented that she intended unambiguously to consent to the admission into evidence of numerous items of evidence that she had represented in writing that she did not object to (Tr., Feb. 27, 2025, at 4), late this afternoon the defendant rescinded her previously communicated written consent to over 600 exhibits she had previously agreed not to object to. (See Ex. D row 19.1.) These exhibits were each derived from data contained in data files generated by the Cellebrite digital forensic software, and the defendant today took the position, for the first time, that she no longer consents to their admission into evidence but only anticipates not objecting to their authenticity, but, even as to that non-objection, only will do so after the Government presents testimony about the Cellebrite software.

The defendant's change in position came as a surprise to counsel for the Government, who had previously explained, on the record and in the defendant's presence, that the defendant's unambiguous consent to the admissibility of just these exhibits would likely remove the need for testimony about the Cellebrite software. (*See* Tr., Feb. 19, 2025, at 20 ("The hundreds of exhibits that he didn't lodge an objection to are text messages. If he is saying that they are authentic now, if he is not objecting to it, *we don't actually need the person who put it into Cellebrite*. We don't actually need the STXU personnel who decrypted it. The only purpose of doing that is for authenticity. If we actually do have a commitment to authenticity, that will be great. *That will greatly streamline the trial.*" (emphasis added)).) More than a week after hearing that explanation, counsel for the defendant then stated on the record that her consent to the admission of just these exhibits was indeed intended to be unambiguous (Tr., Feb. 27, 2025, at 4), rendering it puzzling, at the very least, why she would now reverse her position hours before the list of exhibits was due to the Court.[2]

---

[1] The Government solicited corrections to drafts of these lists at 2:37 p.m. today but has not yet received any, and accordingly has prepared the final submitted versions based on its correspondence with the defendant. Accordingly, the Government requests that defense counsel be directed to confirm the accuracy of the contents of, at least, Exhibit A and Exhibit B.

[2] The Government had expressed its concerns that the defendant's claimed willingness not to object may be "less than meets the eye" for precisely this reason (Tr., Feb. 19, 2025, at 19-20), but relied on defense counsel's subsequent statement on the record that he was "not seeking to create any ambiguity at all" (Tr., Feb. 27, 2025, at 4; *see also id.* ("I mean, when I say no objection, I mean it unambiguously and for all purposes in this case.")).

Honorable Sidney H. Stein
March 5, 2025
Page 3

Regardless of the defendant's change of position, the Government intends to authenticate these exhibits in the manner discussed in Section III.A.2 of the letter-motion, *i.e.*, by calling a witness to testify that the content of the trial exhibits was found in electronic data files in FBI custody, together with evidence regarding how the relevant electronic data was obtained by the FBI, such as testimony regarding the seizure of cellphones, or Apple or Google certifications (to which the defendant consented, Dkt. 761) regarding the provision of stored electronic data to the FBI. (*See* Dkt. 775 at 8.)[3] Although testimony about the operation and use of Cellebrite software would go at most to weight and not admissibility, the Government presently expects that this witness—who generated certain but not all of the Cellebrite data files the exhibits were drawn from—will provide testimony regarding use of the software, which is commonplace and does not even rise to the level of expert testimony. *See, e.g.*, *United States v. Marsh*, 568 F. App'x 15, 16-17 (2d Cir. 2014). Thus, to the extent that the defendant believes testimony about the software (which he is also free to present) is relevant, it will be presented to the jury.

The defendant may not, however, use her supposed desire for the Government to present a witness to testify about the Cellebrite software to dictate the order in which the Government presents its case to the jury, much less do so by an eleventh-hour turnabout. As the Government has stated, it may offer a number of these exhibits subject to connection pursuant to Rule 104(b) before this witness testifies both as to the Cellebrite software and as to the process of matching up exhibits to the source data files. (*See* Dkt. 775 at 7.) This process is explicitly authorized by the Federal Rules of Evidence, *see* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. *The court may admit the proposed evidence on the condition that the proof be introduced later*." (emphasis added)), and routinely employed allowing the party carrying the burden of proof to organize its evidence in the way it believes will be most comprehensible to the jury, *see, e.g.*, *United States v. Vanhoesen*, 366 F. App'x 264, 269 (2d Cir. 2010) ("It is not uncommon for evidence to be received 'subject to' a later connection or foundation being established.").[4] It is particularly appropriate here, where the foundational testimony is to be presented by a witness who is still in the process of reviewing an over 900-line chart matching up the evidence items to the underlying source files; where a last-minute reversal by the defendant has caused the Government to devote substantial time to the pursuit of an ultimately elusive agreement at the expense of other aspects of trial preparation; and where the Court's familiarity with the prior trial (at which almost all of the evidence at issue was featured, including the numerous corroborating details making

---

[3] Exhibit C lists only those Cellebrite-derived Government Exhibits as to which the defendant had previously indicated, in writing, that she had no objection as to admissibility. The Government understands the defendant's position on these exhibits to extend to other Cellebrite-derived Government Exhibits as well, and the Government intends to offer other such exhibits on the basis of the same evidence of authenticity.

[4] Indeed, underscoring the irrelevancy about *when* the evidence is put before the jury, evidence is sufficient even if "the needed foundation was not established during the government's case," so long as it ultimately was established. *E.g.*, *United States v. Ortiz-Renfigo*, 832 F.2d 722, 725 (2d Cir. 1987).

Honorable Sidney H. Stein
March 5, 2025
Page 4

abundantly clear the evidence was authentic) gives the Court an unusually high basis for confidence that the evidence will not ultimately be excluded for lack of foundation.[5]

## II.   Government Exhibit A213

The defendant lodges two meritless objections to Government Exhibit A213 (*see* Ex. C row 60.1), an exhibit cited in Government Exhibit 1353 reflecting that on October 21, 2018, the defendant offered to return a ring to Robert Menendez and apologized to him. (*See* GX 1353 row 69.) The defendant objects to this message on the grounds of incompleteness, apparently referring to redactions of surrounding messages, and relevance. The defendant's objection to the redactions is meritless for the reasons set forth in Section III.C.1 of the Government's letter-motion. (*See* Dkt. 775 at 11.) Indeed, the redacted messages are not only irrelevant but also include a reference to actions of the Ex-Boyfriend discussed in the Government's Supplemental Motions in Limine and excluded by the Court at the conference. (*See* Tr., Feb. 27, 2025, at 13.)[6] But even leaving this aside, if the defendant believes that other messages are relevant and admissible, the remedy is for her to offer those messages (provided she gives proper notice to the Government, as ordered by the Court, and has a proper basis for admissibility), not to exclude this message.

The defendant's relevance objection is also baseless. Government Exhibit A213 shows an event in the relationship between Menendez and the defendant during the course of the scheme. By placing the date on which the defendant offered to return Menendez's ring in temporal context, along with other messages reflecting that the defendant's romantic relationship with Menendez had fully resumed at least by December 27, 2018 (*see* GX 1353 rows 93-94), the challenged exhibit is relevant to show the relationship between the participants at the time of key scheme events. In doing so, it and the related exhibits are relevant to rebut arguments, such as those pressed by Menendez in the first trial, that the status of the defendant's romantic relationship with Menendez was in some way an impediment to the defendant's and Menendez's conspiratorial understanding or joint participation in the bribery scheme. (*See* Tr. 5514-15, 5521-22.) More broadly, evidence of the relationship between coconspirators is plainly relevant, and admissible, even when it relates to other acts the conspirators committed *prior* to the scheme, and not, as here, their relationship during the time period of the scheme itself. *See, e.g.*, *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have held repeatedly that it is within the court's discretion to admit evidence of

---

[5] The use of a chart will greatly shorten the time it takes to present this evidence to the jury, but the preparation and verification of such a chart is a time-consuming endeavor and will not, as a practical matter, be ready immediately. A draft of the chart has been provided to the defendants in 3500 material (see 3545-031), but this is not the final version and is still being verified. It would, as a result, be extraordinarily disruptive to the Government's case—and would not facilitate juror comprehension of the complex events at issue in the trial—to require all of the testimony of Special Agents Coughlin, Graves, and Van Wie to wait until *another* summary chart, of over 900 lines, which was necessitated by the defendant's extraordinary idiosyncratic approach to authenticity issues, is completed, verified, and introduced.

[6] The messages redacted from Government Exhibit A213 are the second and third messages displayed on page 1458 of Government Exhibit A101-ID, an exhibit marked for identification containing the entirety of the chat thread, paginated differently from Government Exhibit 213.

Honorable Sidney H. Stein
March 5, 2025
Page 5

prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.").

### III. Government Exhibit E101-EX1

The defendant also communicated to the Government an objection, on meritless incompleteness grounds, to Government Exhibit E101-EX1, which is an Excel export of a portion of a chat chain between the defendant and Jose Uribe. (*See* Ex. C row 60.2.)[7] The objection based on incompleteness is without any merit for the same reasons that apply to the other such objections, as discussed in Section II of this letter and in Section III.C.1 of the original letter-motion—in sum, even if there were some other portion of the document that was relevant, that portion could be offered if admissible and if proper notice was given. But in this case, the challenged exhibit contains the same text messages, in a different format, as Government Exhibit E101-10, one as to which the defendant did not make any objection (except, recently, the blanket objection concerning Cellebrite extractions discussed in Section II). There is thus no basis to exclude this exhibit on the ground of alleged incompleteness.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:   s/ Paul M. Monteleoni
      Daniel C. Richenthal
      Paul M. Monteleoni
      Lara Pomerantz
      Catherine Ghosh
      Assistant United States Attorneys
      (212) 637-2109/2219/2343/1114

Enclosure

cc:   (by ECF)

      Counsel of Record

---

[7] This objection does not appear in the chart the defendant submitted regarding her outstanding objections (*see* Dkt. 781-1), and defense counsel did not respond to the Government's inquiry as to whether the defendant intended to press this objection.