

Barry Coburn
Admitted DC, MD, VA, NY
202-643-9472
barry@coburngreenbaum.com

March 18, 2025

VIA ECF
The Honorable Sidney H. Stein
United States District Judge
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    <u>United States v. Nadine Menendez, (S4) 23-cr-490 (SHS)/electronics</u>

Dear Judge Stein:

    We represent Defendant Nadine Menendez.  I am writing this letter in brief response to the two government letter motions filed yesterday, March 17, 2025 (ECF Numbers 790 and 791).

    <u>Motion Concerning Additional Self-Authenticating Documents</u>

    At our last pretrial conference with the Court, during which we reviewed government charts concerning, *inter alia,* exhibits it believes are self-authenticating, I thought we had resolved issues concerning the thousands of government exhibits where the government sought our position concerning authenticity and admissibility in advance of trial.  However, last Sunday, March 16, 2025, the government emailed me, telling me it believed that with respect to documents as to which I already had conceded authenticity, I also was required to agree, pretrial, to their admissibility.  In support of this demand, the government quoted a few lines from a transcript.  I asked if I could look at a copy of the transcript itself, since I typically do not order transcripts of every hearing.  The government refused to show it to me, and now has responded with assertions suggesting that I am required to seek authorization under the Criminal Justice Act in order to order our own copies of all transcripts in this case.  Further, the government suggests to the Court that my failure to seek this authorization mandates that the Court inquire of Ms. Menendez whether she is satisfied with her counsel.

    I recognize that the prosecutors in this case likely never have been appointed to represent a client under the Criminal Justice Act.  I have been on the CJA panels in the United States District Court for the District of Columbia and Maryland for decades, served

years ago on a CJA Committee for the United States Court of Appeals for the District of Columbia Circuit, and also have been appointed under CJA to represent a defendant in an ISIS-related terrorism case in the United States District Court for the Eastern District of Virginia. I have been appointed under CJA on multiple occasions as "learned counsel" in federal death penalty cases. I have had cases converted on multiple occasions from retained to CJA status. I say this not to inflate my own background but just to establish that I am familiar with the indigency requirements for a defendant's CJA eligibility. The government may not be aware that a defendant's not having unlimited resources with which to purchase everything in a criminal case that can be purchased is not the same thing as being indigent under CJA. I have no legitimate basis to conclude that Ms. Menendez is indigent. I have made a decision that we do not need, routinely, to order transcripts in this case. I find it peculiar that the government would expressly rely on a portion of a transcript in support of its argument that I should be forced, on the very eve of trial, well after our last pretrial conference which was convened to resolve these very issues, to change my position concerning authenticity versus admissibility concerning a long list of exhibits, but then refuse to show me the transcript (or append it as an exhibit to its letter motion). Finally, I know of no existing predicate, at this juncture, warranting an inquiry of Ms. Menendez concerning her satisfaction with me as her counsel, though if the Court ever became concerned about that issue, I of course would not object to such an inquiry.

<u>Motion Concerning Opening Statement, Cross-Examination and Rule 17(c)</u>

I provided to the government, days early, a copy of one simple demonstrative exhibit that I hope to utilize during what I anticipate will be a brief and highly general opening statement. I have tried to craft it so that it cannot draw the multiple objections the government made during the openings in the first trial, about which I previously have expressed concern. The exhibit is nothing more than a listing of the various counts applicable to Ms. Menendez in this case, with a blank left for the law regarding the knowledge and intent requirements as to each count. My plan is to fill in those blanks at the end of trial and then use the supplemented chart again during closing argument, following our charging conference. At that point I would be in a position to say, with specificity, what I anticipate the Court will instruct concerning the law on these issues. I respectfully submit that there is nothing objectionable about this approach. It is patently permissible for a lawyer to allude, in a general manner, in an opening statement, to the applicable law in the case. I have provided the government with cases to that effect, and the government has provided none rebutting them. The government repeatedly alluded to the law in its opening statement in the first trial, without objection, *e.g..,* as to the law of bribery and fraud. I simply wish to inform the jury that there are, as I anticipate, going to be notice and intent requirements as to every count in the indictment applicable to Ms. Menendez, and that I further anticipate that the evidence elicited at trial will fail to prove those elements. That is our theory of this case

and the central focus of the defense. I will of course refrain from argument during my opening, instead simply telling the jury what I anticipate the evidence will show.

  The government has demanded that I utter, during my opening statement, certain phrases that it has written for me. I confess that I find this approach difficult to tolerate. I respectfully submit that it falls within the governmental "overreaching" observations I previously have made in this case. I do not believe that the government has the slightest predicate to believe that anything I intend to say during my opening statement is impermissible.

  With respect to cross-examination of the government's Meta witness, my suggestion is that the order the government seeks before trial, limited cross-examination of this witness, is hazardous and unwarranted. I would have no objection, following the Meta witness' direct examination, to the Court hearing the parties concerning the issue posed by the government out of the presence of the jury.

  Finally, as to Fed.R.Crim.P.. 17(c), as I have indicated repeatedly to the government, I know my obligations in this regard. We have sought to be scrupulous in adhering to our reciprocal discovery obligations and we will maintain that focus throughout the trial. To my knowledge, to date, we have received no documents pursuant to subpoenas issued under Rule 17(c). We did issue subpoenas to cellphone providers that yielded no documents, and would be happy to provide the cellphone providers' certifications to that effect to the government if that would be helpful to it.

Respectfully submitted,

Barry Coburn