# 004

Designation List Report

## CRITCHLEY

**Critchley, Michael**                    **2024-06-17**

| | |
|---|---:|
| Menendez Designations | 00:36:32 |
| Government Designations | 00:11:20 |
| Hana Designations | 00:01:43 |
| **TOTAL RUN TIME** | **00:49:35** |



| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 9:10 - 9:11 | **Critchley, Michael 2024-06-17** | 00:00:14 | CRITCHLEY.1 |

9:10   And the
9:11   witness will now be sworn.

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 9:18 - 11:08 | **Critchley, Michael 2024-06-17** | 00:01:21 | CRITCHLEY.2 |

9:18   Q.  Hi, Mr. Critchley.
9:19   A.  How are you doing?
9:20   Q.  Good.  And yourself?
9:21   A.  Fine.  Thank you.
9:22   Q.  What do you do for a living?
9:23   A.  I'm an attorney.
9:24   Q.  How long have you been an attorney?
9:25   A.  I was admitted in November of 1972.
10:01  Q.  And where do you practice currently?
10:02  A.  In Roseland, New Jersey.
10:03  Q.  What's the name of the firm at which you
10:04      practice?
10:05  A.  Critchley; Kinum, K-I-N-U-M; and Luria,
10:06      L-U-R-I-A.
10:07  Q.  Is that your own firm?
10:08  A.  Yes, it is.
10:09  Q.  What are your specialties in law?
10:10  A.  Trial litigation.
10:11  Q.  And do you specialize in any particular
10:12      type of trial litigation?
10:13  A.  Well, I do a lot of white collar criminal
10:14      defense work and we do a significant amount of
10:15      commercial litigation.
10:16  Q.  Where do you practice law?  What states or
10:17      jurisdictions?
10:18  A.  Excuse me, please?
10:19  Q.  What states or jurisdictions?
10:20  A.  Just New Jersey.
10:21  Q.  Do you practice in federal and state
10:22      court?
10:23  A.  Yes, I do.
10:24  Q.  What's your educational background,
10:25      Mr. Critchley?
11:01  A.  College, Seton Hall University; law school
11:02      of Seton Hall University.
11:03  Q.  When did you graduate from law school?

NTW_000004361

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

11:04  A.  1972.

11:05  Q.  So 50 --

11:06  A.  Long time ago.

11:07  Q.  50-plus years ago?

11:08  A.  Yeah.

| 12:05 - 13:11 | **Critchley, Michael 2024-06-17** | 00:01:27 | CRITCHLEY.3 |

12:05  Q.  Okay.  Are you a member of any

12:06        associations or committees?

12:07  A.  I have -- I am a member of the American

12:08        College of Trial Lawyers, American Board of

12:09        Criminal Lawyers, various associations.  I was a

12:10        former past president of the Association of

12:11        Criminal Defense Lawyers in New Jersey, founding

12:12        member and a founding trustee.

12:13        Also I was -- we put together a -- a

12:14        course at Seton Hall University.  I was executive

12:15        director of that course for about ten years,

12:16        teaching lawyers trial skills, Inns of Court

12:17        program.  We did that for about ten years, and

12:18        prior to that I was a counsel to the Rutgers Law

12:19        School Inns of Court.

12:20  Q.  What is the American College of Trial

12:21        Lawyers?

12:22  A.  It's a group of lawyers who are devoted

12:23        primarily their career to trying cases.  It is an

12:24        association which you cannot join.  You're invited

12:25        to join only by somebody conducting an

13:01        investigation, and they send around applications

13:02        and people review your credentials and then people

13:03        make a determination as to whether you should be

13:04        admitted or not.  And then one day you receive

13:05        a -- some sort of communication saying you've been

13:06        invited to be a member of the American College of

13:07        Trial Lawyers.  That's one of the more prestige

13:08        trial lawyers associations in the country.

13:09  Q.  How long have you been a member of the

13:10        American College of Trial Lawyers?

13:11  A.  25 years.

| 13:23 - 14:01 | **Critchley, Michael 2024-06-17** | 00:00:15 | CRITCHLEY.4 |

13:23        ATTORNEY WEITZMAN:  Okay.  So let's put up

NTW_000004362

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 13:24   Government Exhibit B105-GG, and if we can turn to | | |
| | 13:25   the substitution of attorney page on Page 2. If | | |
| | 14:01   you can just pause there. | | |
| 15:05 - 16:06 | **Critchley, Michael 2024-06-17** | 00:01:09 | CRITCHLEY.5 |
| | 15:05   Q. Mr. Critchley, are you able to see | | |
| | 15:06   Government Exhibit B105-GG? | | |
| | 15:07   A (Document review.) | | |
| | 15:08   Keep going. Okay. Yes, okay. | | |
| | 15:09   Substitution of attorney. | | |
| | 15:10   Q. Okay. Do you recognize this document? | | |
| | 15:11   A. Yes, I do. | | |
| | 15:12   Q. And does it bear your signature? | | |
| | 15:13   A. It certainly does. | | |
| | 15:14   Q. And on March 28, 2018, were you | | |
| | 15:15   substituted in as counsel for Elvis Parra? | | |
| | 15:16   A. Yes, I was. | | |
| | 15:17   Q. After you substituted in as counsel for | | |
| | 15:18   Elvis Parra, what did you do in the case to learn | | |
| | 15:19   the file? | | |
| | 15:20   A. I got the file from the withdrawing | | |
| | 15:21   attorney, Mr. Dorian. I don't believe I ever | | |
| | 15:22   spoke to him. I just started reviewing it, from | | |
| | 15:23   the factual standpoint and from a legal | | |
| | 15:24   standpoint. | | |
| | 15:25   Q. As part of your file, did you review any | | |
| | 16:01   prior plea offers that had been provided to | | |
| | 16:02   Mr. Parra? | | |
| | 16:03   A. I think there was a plea offer prior to my | | |
| | 16:04   getting into the case. | | |
| | 16:05   Q. Let me see if I can refresh your | | |
| | 16:06   recollection. | | |
| 18:21 - 19:18 | **Critchley, Michael 2024-06-17** | 00:01:06 | CRITCHLEY.6 |
| | 18:21   Q. I'm showing you what's been identified as | | |
| | 18:22   Defense Exhibit 1865. And if you would turn to | | |
| | 18:23   Page 2 of the document. | | |
| | 18:24   Do you recognize this document? | | |
| | 18:25   A. Do I have independent recollection now, | | |
| | 19:01   no, but it's in the file, so I assume I've | | |
| | 19:02   reviewed it. | | |
| | 19:03   Q. And is this a -- a arraignment form for | | |

NTW_000004363

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

19:04      the State of New Jersey versus Elvis Parra?
19:05   A.   That's what it says, yes.
19:06   Q.   What date was the arraignment.
19:07   A.   Okay. Let me see what date. April.
19:08      April.
19:09   Q.   If you can look at the second line
19:10      underneath the caption, it says arraignment date?
19:11   A.   February 10, 2017.
19:12   Q.   And do you see the line that says plea
19:13      offer?
19:14   A.   I do.
19:15   Q.   And was there a plea offered at the time
19:16      of the arraignment?
19:17   A.   Obviously, it says second degree Count 1,
19:18      five years, restitution $388,000.

| 20:05 - 20:08 | **Critchley, Michael 2024-06-17** | 00:00:09 | CRITCHLEY.7 |

20:05   Q.   Prior to the arraignment, based on your
20:06      review of the file and understanding of the case,
20:07      had the New Jersey State Attorney General made a
20:08      plea offer to Elvis Parra?

| 20:19 - 21:04 | **Critchley, Michael 2024-06-17** | 00:00:30 | CRITCHLEY.8 |

20:19   A.   According to this document, they had.
20:20   Q.   Now, this document bears the caption of
20:21      State of New Jersey versus Elvis Parra, correct?
20:22   A.   Yes, it does.
20:23   Q.   And do you have any reason to believe that
20:24      it's not an authentic copy of the disposition
20:25      form?
21:01   A.   I do not.
21:02   Q.   Okay. If we can turn to Defense
21:03      Exhibit 1868, which I believe has been emailed to
21:04      you as well.

| 21:14 - 22:06 | **Critchley, Michael 2024-06-17** | 00:00:40 | CRITCHLEY.9 |

21:14   Q.   Reviewing Defense Exhibit 1868, do you
21:15      recognize this as a plea offer letter that was
21:16      sent to predecessor counsel, Howard Dorian, by the
21:17      New Jersey State Attorney General's office, dated
21:18      February 2, 2017?
21:19   A.   Yes.
21:20   Q.   And if you turn to the first -- the second

NTW_000004364

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 21:21 | full paragraph, it says, "The state will accept | | |
| | 21:22 | from the defendant a guilty plea to second degree | | |
| | 21:23 | theft by deception in Count 1 of the indictment." | | |
| | 21:24 | Do you see that? | | |
| | 21:25 | A. I do. | | |
| | 22:01 | Q. Then in the next paragraph it states: | | |
| | 22:02 | "The State will recommend to the sentencing court | | |
| | 22:03 | that the defendant be sentenced to five years | | |
| | 22:04 | New Jersey State prison." | | |
| | 22:05 | Do you see that? | | |
| | 22:06 | A. I do. | | |

| 23:05 - 23:15 | **Critchley, Michael 2024-06-17** | 00:00:21 | CRITCHLEY.10 |

| | 23:05 | Q. Did you think Elvis Parra should take this | | |
| | 23:06 | plea offer? | | |
| | 23:07 | A. No. | | |
| | 23:08 | Q. Why not? | | |
| | 23:09 | A. Remember, this is -- you're asking me | | |
| | 23:10 | about an event depicted in a letter of | | |
| | 23:11 | February 2017, so I can't discuss this particular | | |
| | 23:12 | plea offer because I wasn't representing him then. | | |
| | 23:13 | Q. Okay. | | |
| | 23:14 | A. There were subsequent offers after this | | |
| | 23:15 | that I was personally aware of and was involved. | | |

| 32:09 - 32:21 | **Critchley, Michael 2024-06-17** | 00:00:31 | CRITCHLEY.11 |

| | 32:09 | Q. In -- in connection with your | | |
| | 32:10 | representation of Mr. Parra, did you meet with | | |
| | 32:11 | Mr. Uribe? | | |
| | 32:12 | A. I did. | | |
| | 32:13 | Q. And what was the purpose of that meeting? | | |
| | 32:14 | A. Let's say I wanted to lay eyes on him. | | |
| | 32:15 | Q. And what did you do during that meeting? | | |
| | 32:16 | A. I listened to -- well, we spoke generally | | |
| | 32:17 | about the case, and I listened to him. I may have | | |
| | 32:18 | asked him a couple questions. Now if you're going | | |
| | 32:19 | to ask me what questions I asked him, I don't | | |
| | 32:20 | remember. I must have asked him a couple | | |
| | 32:21 | questions. | | |

| 34:07 - 34:12 | **Critchley, Michael 2024-06-17** | 00:00:15 | CRITCHLEY.12 |

| | 34:07 | Q. You had mentioned E&K Trucking as | | |
| | 34:08 | Mr. Parra's trucking company; is that correct? | | |

NTW_000004365

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

34:09    A.   Correct.
34:10    Q.   Based on your review of the file and your
34:11         defense of the case, do you know how many truckers
34:12         worked at E&K Trucking?

| 34:15 - 34:18 | Critchley, Michael 2024-06-17 | 00:00:07 | CRITCHLEY.13 |

34:15    A.   Depends on what years you're talking
34:16         about.
34:17    Q.   At any point in time, what was the high
34:18         point, to your recollection?

| 34:21 - 34:25 | Critchley, Michael 2024-06-17 | 00:00:12 | CRITCHLEY.14 |

34:21    A.   95.
34:22    Q.   95 truckers?
34:23    A.   Working out of there, yes.
34:24    Q.   Okay.  Do you recall what race or
34:25         ethnicity most of the truckers were?

| 35:02 - 35:03 | Critchley, Michael 2024-06-17 | 00:00:03 | CRITCHLEY.15 |

35:02    A.   As I recall, most of them were
35:03         Hispanic.

| 39:04 - 39:23 | Critchley, Michael 2024-06-17 | 00:00:45 | CRITCHLEY.16 |

39:04    Q.   I'd like to turn your attention to March
39:05         of 2019.
39:06         Do you know Senator Menendez,
39:07         Mr. Critchley?
39:08    A.   I do.
39:09    Q.   How long have you known Senator Menendez?
39:10    A.   About 30 years.
39:11    Q.   How have you known Senator Menendez?
39:12    A.   Primarily through politics.
39:13    Q.   How would you describe your relationship
39:14         with Senator Menendez?
39:15    A.   Friendly.
39:16    Q.   Do you socialize?
39:17    A.   No.
39:18    Q.   Do you speak on the phone?
39:19    A.   Periodically.
39:20    Q.   I'd like to direct -- I'd like to show you
39:21         what's been marked and admitted in evidence as
39:22         Government Exhibit 6B-2301, which you should have
39:23         received.

NTW_000004366

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 40:06 - 40:12 | Critchley, Michael 2024-06-17 | 00:00:19 | CRITCHLEY.17 |

40:06   Q.   You're looking at a copy of your phone
40:07         records for a phone number, 973-819-4232.
40:08         Do you recognize that number?
40:09   A.   That is my phone number.
40:10   Q.   If I could direct your attention to the
40:11         date entry, March 12th at 3:19 P.M.
40:12   A.   March 12th at 3:19 P.M.

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 40:19 - 41:06 | Critchley, Michael 2024-06-17 | 00:00:37 | CRITCHLEY.18 |

40:19   Q.   Did you find the entry for March 12th,
40:20         3:19 P.M.?
40:21   A.   I do.
40:22   Q.   There is a caller with the phone
40:23         number 202-224-4744.
40:24         Do you recognize that number offhand?
40:25   A.   Offhand, no.
41:01   Q.   I'm going to ask you -- I'm going to
41:02         refresh your recollection with Government
41:03         Exhibit 1305, which you should have received as
41:04         well.  By the way, that phone -- that call with
41:05         the last four, 4744, it's an income coming call
41:06         with a two-minute duration.

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| 42:09 - 45:09 | Critchley, Michael 2024-06-17 | 00:03:22 | CRITCHLEY.19 |

42:09   Q.   If you could turn to Page 2 of that
42:10         document, you'll see a -- in the middle of the
42:11         page, an entry for Robert Menendez.
42:12         Do you see that entry?
42:13   A.   I see -- I see -- I see Robert Menendez,
42:14         yes.
42:15   Q.   And do you see that there is a phone
42:16         number assigned to Robert Menendez, and the phone
42:17         number is 202-224-4744?
42:18   A.   It's one of three numbers, yes.
42:19   Q.   Okay.  So now going back to 6B 2301-1, on
42:20         March 12 at 3:19, you got a phone call from that
42:21         same phone call, 202-224-4744.
42:22         Do you see that?
42:23   A.   Yes, I saw that.
42:24   Q.   And the call, do you see that it says two,
42:25         as far as duration of the call?

NTW_000004367

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

43:01   A.  Yes.

43:02   Q.  Do you recall how long your phone call

43:03       with Senator Menendez was on March 12?

43:04   A.  Obviously, under two minutes.

43:05   Q.  Okay.  Had you previously spoken to

43:06       Senator Menendez before this date?

43:07   A.  About what?

43:08   Q.  About anything?

43:09   A.  Yes.

43:10   Q.  Okay.  So the date here, by the way, is

43:11       March 12, 2019.  You had mentioned that you spoke

43:12       to Senator Menendez primarily about -- about or

43:13       through politics.

43:14       Do you recall that?

43:15   A.  Yes.

43:16   Q.  What did you mean by that?

43:17   A.  Well, Senator Menendez is a politician.  I

43:18       think I'm an active democrat.  I support elected

43:19       officials in the State of New Jersey, so in the

43:20       context of that relationship, that's what I meant.

43:21   Q.  Do you serve on any New Jersey State Bar

43:22       Association committees?

43:23   A.  No longer.

43:24   Q.  Okay.  Did you in 2019 or otherwise --

43:25   A.  No.

44:01   Q.  -- serve on any state bar?

44:02   A.  No.

44:03   Q.  Are you familiar with the New Jersey State

44:04       Bar Judicial and Prosecutorial Appointments

44:05       Committee?

44:06   A.  Yes, I am.

44:07   Q.  Have you ever served on that committee?

44:08   A.  I have.

44:09   Q.  And what is that committee?

44:10   A.  That's members of the bar association who

44:11       review an application submitted by the governor to

44:12       individuals who are seeking to become superior

44:13       court judges in the State of New Jersey.

44:14   Q.  In connection with your work on the

44:15       New Jersey State Bar Association Judicial and

44:16       Prosecutorial Appointments Committee, did you ever

NTW_000004368

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

|  | 44:17 | speak to Senator Menendez about potential judicial | | |
|  | 44:18 | and prosecutorial appointments? | | |
|  | 44:19 | A. No. | | |
|  | 44:20 | Q. Okay. What, if anything, do you recall | | |
|  | 44:21 | about your conversation with Senator Menendez, | | |
|  | 44:22 | your phone call on March 12, 2019? | | |
|  | 44:23 | A. Not much. | | |
|  | 44:24 | Q. Can you just, generally, without -- even | | |
|  | 44:25 | if you don't recall specific words, generally | | |
|  | 45:01 | recall the substance of that call? | | |
|  | 45:02 | A. As I recall, as you can indicate and see | | |
|  | 45:03 | from the phone record, it was a very short | | |
|  | 45:04 | conversation. I do not recall the words that were | | |
|  | 45:05 | expressed between the senator and I, but | | |
|  | 45:06 | thematically -- in terms of thematically, I got | | |
|  | 45:07 | the impression, the understanding, that he felt | | |
|  | 45:08 | the same way that I did about the prosecution of | | |
|  | 45:09 | Elvis Parra, that it was an abuse of prosecution. | | |

**45:18 - 45:21 · Critchley, Michael 2024-06-17 · 00:00:16 · CRITCHLEY.20**

|  | 45:18 | Q. Mr. Critchley, again, let me ask you, what |
|  | 45:19 | in the conversation do you recall caused you to |
|  | 45:20 | believe that Senator Menendez and you shared the |
|  | 45:21 | same views about the Elvis Parra prosecution? |

**45:23 - 46:11 · Critchley, Michael 2024-06-17 · 00:00:33 · CRITCHLEY.21**

|  | 45:23 | A. Specifically, I can't answer that question |
|  | 45:24 | because I think -- I can't recall any specific |
|  | 45:25 | words we used. I just had that understanding from |
|  | 46:01 | the conversation what I expressed previously, but |
|  | 46:02 | if you're asking me what did I say to him and what |
|  | 46:03 | did he say to me, I cannot recall that at all. |
|  | 46:04 | That would just be sheer guess. |
|  | 46:05 | Q. Okay. Let me ask it a bit differently. |
|  | 46:06 | After he called you -- well, let me |
|  | 46:07 | rephrase. |
|  | 46:08 | On March 12, 2019, did you know that |
|  | 46:09 | Senator Menendez would be calling you on that |
|  | 46:10 | date? |
|  | 46:11 | A. No. |

**46:25 - 47:02 · Critchley, Michael 2024-06-17 · 00:00:09 · CRITCHLEY.22**

|  | 46:25 | What, if anything, in sum or substance, do |

NTW_000004369

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 47:01    you recall you and Senator Menendez discussed | | |
| | 47:02    regarding the Elvis Parra case? | | |
| 47:06 - 47:18 | **Critchley, Michael 2024-06-17** | 00:00:33 | CRITCHLEY.23 |
| | 47:06    A.  I wish I had a rewind in my memory, I | | |
| | 47:07    could just rewind, but asking me what I recall | | |
| | 47:08    about a specific conversation, which I've had | | |
| | 47:09    thousands since then, I just can't recall.  All I | | |
| | 47:10    can tell you, as best I can, as honestly as I can, | | |
| | 47:11    as truthfully as I can, that I had the | | |
| | 47:12    understanding that the senator had the same | | |
| | 47:13    feeling about the case that I had regarding Elvis | | |
| | 47:14    Parra, and that was an abuse of prosecution. | | |
| | 47:15    Now, when you want me to go beyond that, I | | |
| | 47:16    just can't. | | |
| | 47:17    Q.  What makes you think that it was an abuse | | |
| | 47:18    of prosecution? | | |
| 47:21 - 48:01 | **Critchley, Michael 2024-06-17** | 00:00:15 | CRITCHLEY.24 |
| | 47:21    A.  Well, I'm going to repeat what I said | | |
| | 47:22    before, Avi.  I thought it was improper because | | |
| | 47:23    the attorney general's office was being used to | | |
| | 47:24    enforce a private debt on behalf of an insurance | | |
| | 47:25    company.  And the insurance company never made a | | |
| | 48:01    single effort to collect it on their own. | | |
| 48:13 - 48:19 | **Critchley, Michael 2024-06-17** | 00:00:17 | CRITCHLEY.25 |
| | 48:13    Q.  Did Senator Menendez ask you to do | | |
| | 48:14    anything or take any action on that call? | | |
| | 48:15    A.  Avi, I don't recall him asking me anything | | |
| | 48:16    like that. | | |
| | 48:17    Q.  Did Senator Menendez explain to you why he | | |
| | 48:18    was calling you in connection with the Elvis Parra | | |
| | 48:19    matter? | | |
| 48:21 - 48:21 | **Critchley, Michael 2024-06-17** | 00:00:03 | CRITCHLEY.26 |
| | 48:21    A.  I don't recall anything like that. | | |
| 49:02 - 49:05 | **Critchley, Michael 2024-06-17** | 00:00:11 | CRITCHLEY.27 |
| | 49:02    Q.  Did you leave the call in any way | | |
| | 49:03    understanding whether the senator expected you to | | |
| | 49:04    take any action on behalf of Elvis Parra? | | |
| | 49:05    A.  No. | | |
| 49:08 - 49:10 | **Critchley, Michael 2024-06-17** | 00:00:13 | CRITCHLEY.28 |

NTW_000004370

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 49:08  Q.  Was -- did Senator Menendez express any | | CRITCHLEY.28 |
| | 49:09      concerns to you about the fact that the -- that | | |
| | 49:10      Elvis Parra's company employed 95 Latino truckers? | | |

| 49:14 - 50:03 | **Critchley, Michael 2024-06-17** | 00:00:43 | CRITCHLEY.29 |
| | 49:14  A.  I don't recollect any conversation like | | |
| | 49:15      that.  It doesn't mean it didn't occur; I just | | |
| | 49:16      don't recollect it. | | |
| | 49:17  Q.  Was the March 12, 2019, call with Senator | | |
| | 49:18      Menendez the only time you discussed the Parra | | |
| | 49:19      case with Senator Menendez? | | |
| | 49:20  A.  To the best of my recollection, it is, | | |
| | 49:21      yes. | | |
| | 49:22  Q.  Okay.  Did anyone else from the senator's | | |
| | 49:23      team or staff ever contact you or your office in | | |
| | 49:24      connection with Elvis Parra's case? | | |
| | 49:25  A.  No, they did not, no. | | |
| | 50:01  Q.  Did anything about your conversation with | | |
| | 50:02      Senator Menendez on March 12, 2019, strike you as | | |
| | 50:03      inappropriate or improper? | | |

| 50:07 - 50:09 | **Critchley, Michael 2024-06-17** | 00:00:08 | CRITCHLEY.30 |
| | 50:07  A.  Not at all. | | |
| | 50:08  Q.  Was it unusual for a senator to reach out | | |
| | 50:09      to you? | | |

| 50:11 - 51:17 | **Critchley, Michael 2024-06-17** | 00:01:24 | CRITCHLEY.31 |
| | 50:11  A.  That's a -- can you be a little bit more | | |
| | 50:12      specific in the question? | | |
| | 50:13  Q.  Had you ever -- had Senator Menendez ever | | |
| | 50:14      reached out to you in the past in connection with | | |
| | 50:15      any other criminal cases? | | |
| | 50:16  A.  Had he reached out to me about any other | | |
| | 50:17      criminal cases? | | |
| | 50:18  Q.  Had he spoken to you about other criminal | | |
| | 50:19      cases in the past? | | |
| | 50:20  A.  I -- I -- I got to believe we had | | |
| | 50:21      conversations about cases.  Just general in | | |
| | 50:22      nature.  When I say "general in nature," a number | | |
| | 50:23      of cases I have are covered in the newspaper.  And | | |
| | 50:24      it would not be unusual for a number of people, | | |
| | 50:25      including the senator, to have a conversation with | | |
| | 51:01      me generally about the case.  Now, do I recall a | | |

NTW_000004371

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 51:02 | specific conversation, no. | | |
| | 51:03 | Q. Did there come a time when Senator | | |
| | 51:04 | Menendez called you about an individual named | | |
| | 51:05 | Jamel Semper? | | |
| | 51:06 | A. Yes. | | |
| | 51:07 | Q. And do you know who Jamel Semper is? | | |
| | 51:08 | A. Do I know who Jamel -- yes, I do. | | |
| | 51:09 | Q. And who is Mr. Semper? | | |
| | 51:10 | A. He right now is a Federal District Court | | |
| | 51:11 | judge in the District of New Jersey.  He was | | |
| | 51:12 | formerly an Assistant United States Attorney, and | | |
| | 51:13 | prior to that he was assistant prosecutor in Union | | |
| | 51:14 | County. | | |
| | 51:15 | Q. And what, if anything, do you recall about | | |
| | 51:16 | your conversation between Senator Menendez and | | |
| | 51:17 | yourself regarding, now, Judge Semper? | | |

| 51:20 - 52:18 | **Critchley, Michael 2024-06-17** | 00:01:05 | CRITCHLEY.32 |
|---|---|---|---|
| | 51:20 | A. Asked me my opinion of him and what I | | |
| | 51:21 | thought about Jamel Semper.  And I gave him my | | |
| | 51:22 | opinion. | | |
| | 51:23 | Q. A few days after your call with Senator | | |
| | 51:24 | Menendez, did you have a call with Attorney | | |
| | 51:25 | General Gurbir Grewal regarding the Elvis Parra | | |
| | 52:01 | case? | | |
| | 52:02 | A. I don't know about a few days after, | | |
| | 52:03 | number one.  And I don't recall having a specific | | |
| | 52:04 | conversation with him about the Elvis Parra case. | | |
| | 52:05 | Q. Okay.  Did there come a time when you had | | |
| | 52:06 | a call with Attorney General Grewal? | | |
| | 52:07 | A. There is. | | |
| | 52:08 | Q. And did it concern the Elvis Parra case? | | |
| | 52:09 | A. Did it concern the Elvis Parra case, | | |
| | 52:10 | specifically, no.  Did it express concern that I | | |
| | 52:11 | felt that the insurance companies had too much | | |
| | 52:12 | sway over prosecutions that are brought by the | | |
| | 52:13 | insurance fraud prosecutor, yes. | | |
| | 52:14 | Sometimes you lose the distinction as to | | |
| | 52:15 | where the insurance company ends and the attorney | | |
| | 52:16 | general's office begins.  So it was just my way of | | |
| | 52:17 | generally complaining. | | |

NTW_000004372

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 52:18 | Did I mention a specific case to him, no. | | |
|---|---|---|---|---|

**52:21 - 53:03**    **Critchley, Michael 2024-06-17**      00:00:18    CRITCHLEY.33

| | 52:21 | Q. | You know, I wanted to follow up on one |
|---|---|---|---|
| | 52:22 | | question I asked beforehand regarding Jamel |
| | 52:23 | | Semper. |
| | 52:24 | A. | Sure. |
| | 52:25 | Q. | You said that Senator Menendez called you |
| | 53:01 | | to get your opinion of him. |
| | 53:02 | | Are you able to tell us what you told |
| | 53:03 | | Senator Menendez regarding Mr. Semper? |

**53:06 - 54:22**    **Critchley, Michael 2024-06-17**      00:01:50    CRITCHLEY.34

| | 53:06 | A. | I thought whatever he was considering |
|---|---|---|---|
| | 53:07 | | Jamel for, he would be an excellent selection, |
| | 53:08 | | both by my personal experience with him and by |
| | 53:09 | | reputation.  He was an excellent prosecutor, he |
| | 53:10 | | was an excellent Assistant United States Attorney, |
| | 53:11 | | and whatever they're thinking of considering him |
| | 53:12 | | for, I would be fully in favor of it. |
| | 53:13 | Q. | Thank you. |
| | 53:14 | | So back to your call with Attorney General |
| | 53:15 | | Gurbir Grewal, you had mentioned that you said |
| | 53:16 | | you -- I can't recall the exact words, but I think |
| | 53:17 | | you said you spoke about insurance prosecutions in |
| | 53:18 | | his office. |
| | 53:19 | A. | I talked about the Office of Insurance |
| | 53:20 | | Fraud prosecutor, which is a designation within |
| | 53:21 | | the office who basically handled insurance-related |
| | 53:22 | | prosecutions, and my complaint was I thought that |
| | 53:23 | | the insurance industry had far too much influence |
| | 53:24 | | over prosecutorial decisions made by the Office of |
| | 53:25 | | Insurance Fraud Prosecutor, and that was my |
| | 54:01 | | personal opinion, and, actually, some opinions of |
| | 54:02 | | other defense attorneys. |
| | 54:03 | Q. | Did you call Mr. Grewal on his cell phone |
| | 54:04 | | or his work line; do you recall? |
| | 54:05 | A. | I don't recall. |
| | 54:06 | Q. | Do you have Mr. Grewal's cell phone |
| | 54:07 | | number -- not right this moment. |
| | 54:08 | | Do you generally have his cell phone? |
| | 54:09 | A. | I had it.  I don't know if it it's the |

NTW_000004373

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|
| | 54:10 | same number. | | |
| | 54:11 | Q. Did you have a relationship with Attorney | | |
| | 54:12 | General Grewal? | | |
| | 54:13 | A. When you say "relationship," you know, | | |
| | 54:14 | it's a small state even though we have 8 million | | |
| | 54:15 | people. I dealt with him when he was an Assistant | | |
| | 54:16 | United States Attorney. And I found him to be a | | |
| | 54:17 | very -- very good assistant, very reasonable, and | | |
| | 54:18 | very professional. | | |
| | 54:19 | Q. In connection with your comments about the | | |
| | 54:20 | Office of the Insurance Fraud prosecutor, did you | | |
| | 54:21 | have other cases with the insurance fraud | | |
| | 54:22 | prosecutor at the time or was it just Elvis Parra? | | |
| 54:24 - 56:11 | **Critchley, Michael 2024-06-17** | | 00:01:39 | CRITCHLEY.35 |
| | 54:24 | A. I had cases with them. Are you asking me | | |
| | 54:25 | to specifically recall one that I had? I think a | | |
| | 55:01 | simultaneous case with the office of insurance | | |
| | 55:02 | prosecutor where a client of mine was also | | |
| | 55:03 | indicted for insurance fraud. | | |
| | 55:04 | Q. Had you spoken to Attorney General Grewal | | |
| | 55:05 | before about the office of insurance fraud | | |
| | 55:06 | prosecutors before this phone call? | | |
| | 55:07 | A. No. | | |
| | 55:08 | Q. And why did you call Attorney General | | |
| | 55:09 | Grewal, in particular, as opposed to one of the | | |
| | 55:10 | line prosecutors? | | |
| | 55:11 | A. Well, because I wasn't going to -- I | | |
| | 55:12 | wasn't going to talk to him about a case. If I | | |
| | 55:13 | was going to talk to him specifically about a | | |
| | 55:14 | case, I would have gone up the chain, from the | | |
| | 55:15 | line prosecutor to the attorney general. | | |
| | 55:16 | Because I was often thinking about this. | | |
| | 55:17 | I think at the time I was going over this file and | | |
| | 55:18 | the more I got over it, the more frustrated I | | |
| | 55:19 | became, because I thought it was such an improper, | | |
| | 55:20 | unfair prosecution. And I think just one day I | | |
| | 55:21 | just felt like giving him a call and just register | | |
| | 55:22 | my complaints. | | |
| | 55:23 | Q. Was there any, to your knowledge, | | |
| | 55:24 | prohibition or practice or policy that precluded | | |

NTW_000004374

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 55:25 | you from calling the attorney general directly? | | |
| | 56:01 | A.  If there was, I didn't know of it.  If | | |
| | 56:02 | there was, I would have followed it. | | |
| | 56:03 | Q.  Was there a reason -- what do you recall | | |
| | 56:04 | Attorney General Grewal saying in response to your | | |
| | 56:05 | complaint? | | |
| | 56:06 | A.  I don't recall.  I don't recall anything | | |
| | 56:07 | that he said in response. | | |
| | 56:08 | Q.  Okay.  Were you concerned at all about the | | |
| | 56:09 | propriety or impropriety of contacting the | | |
| | 56:10 | attorney general -- New Jersey State Attorney | | |
| | 56:11 | General directly rather than the line prosecutors? | | |

| 56:13 - 57:19 | **Critchley, Michael 2024-06-17** | 00:01:32 | CRITCHLEY.36 |
|---|---|---|---|
| | 56:13 | A.  If I thought it was improper, I would not | | |
| | 56:14 | have contacted him.  If I was going to discuss a | | |
| | 56:15 | specific case, I would not have called him up and | | |
| | 56:16 | discussed a specific case without going though the | | |
| | 56:17 | prosecutor and getting permission, because that | | |
| | 56:18 | would be bad form and bad result on many levels. | | |
| | 56:19 | Q.  But if I understand your testimony | | |
| | 56:20 | correctly, you did not mention a specific case; is | | |
| | 56:21 | that right? | | |
| | 56:22 | A.  As best as I recall. | | |
| | 56:23 | Q.  And when you say, "It would have been bad | | |
| | 56:24 | form to mention a specific case," what did you | | |
| | 56:25 | mean by that? | | |
| | 57:01 | A.  Because that would just engender the anger | | |
| | 57:02 | of the line prosecutors that I had to deal with. | | |
| | 57:03 | Q.  Other than engendering the anger about | | |
| | 57:04 | going over the head of the line prosecutors, did | | |
| | 57:05 | you understand that there was a policy prohibiting | | |
| | 57:06 | you or other defense lawyers from contacting the | | |
| | 57:07 | New Jersey State Attorney General directly? | | |
| | 57:08 | A.  I do not know of one, and if I did know of | | |
| | 57:09 | one, I would have followed it, and if I had a | | |
| | 57:10 | policy saying don't contact the attorney general, | | |
| | 57:11 | I would not have contacted them. | | |
| | 57:12 | Q.  Okay.  Do you know of any policy that | | |
| | 57:13 | prohibits elected officials from contacting the | | |
| | 57:14 | New Jersey State Attorney General? | | |

NTW_000004375

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

57:15  A.  I don't know of any.

57:16  Q.  Now, you said that you raised a broader

57:17      concern about the Office of the New Jersey

57:18      Insurance Fraud prosecutors, correct?

57:19  A.  Yes.

| 58:01 - 58:17 | **Critchley, Michael 2024-06-17** | 00:00:38 | CRITCHLEY.37 |

58:01  Q.  Did you -- in connection with your call

58:02      with New Jersey Attorney General Grewal, had you

58:03      mentioned that you spoke to Senator Menendez about

58:04      the matter?

58:05  A.  I did not.  As I recall, I did not.

58:06  Q.  Did you mention to Attorney General Grewal

58:07      the number of truckers who were employed by E&K

58:08      Trucking on your call?

58:09  A.  To the best of my recollection, I did not.

58:10  Q.  Did you tell the line prosecutors in the

58:11      case that you had reached out to New Jersey

58:12      Attorney General Grewal?

58:13  A.  No.

58:14  Q.  Did you tell the line prosecutors in the

58:15      Elvis Parra case that you had received a call from

58:16      Senator Menendez?

58:17  A.  No.

| 58:23 - 62:12 | **Critchley, Michael 2024-06-17** | 00:04:07 | CRITCHLEY.38 |

58:23      What happened with respect to plea offers

58:24      and the disposition of the case in connection with

58:25      the Parra case after you called Attorney General

59:01      Grewal?

59:02  A.  Let me just put the structure together

59:03      since you're asking about plea negotiations.  They

59:04      showed me a plea offer that occurred prior to my

59:05      involvement in the case.  Subsequent to that plea

59:06      offer, there was another plea offer, I believe was

59:07      the end of -- we ended -- in 2018, sometime in

59:08      December, where the plea offer that was extended

59:09      initially got better.

59:10      What I mean by better, initially it was a

59:11      plea offer to plead to Count 2 with a sentence of

59:12      five years.  The subsequent plea offer was reduced

59:13      from five years.  That was plea offer -- sentenced

NTW_000004376

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|

| | 59:14 | as a second with a sentence of anywhere between | | |
| | 59:15 | three and five -- five years, which meant if the | | |
| | 59:16 | person got -- received three years, he would be | | |
| | 59:17 | eligible for parole in nine months.  If he got | | |
| | 59:18 | 12 months -- if he got five years, he would be | | |
| | 59:19 | eligible for parole in 12 months. | | |
| | 59:20 | And in addition, the AG said they would | | |
| | 59:21 | not object to his introduction or acceptance into | | |
| | 59:22 | the -- what's referred to as the ISP program.  In | | |
| | 59:23 | New Jersey, it's called ISP.  It stands for | | |
| | 59:24 | intensive supervision probation.  And if you're | | |
| | 59:25 | accepted into that, you can be eligible for | | |
| | 60:01 | release in 90 days, approximately. | | |
| | 60:02 | And based upon his record, meaning | | |
| | 60:03 | Mr. Parra being nonviolent, he would have been, I | | |
| | 60:04 | believe eligible for two things, eligible for the | | |
| | 60:05 | lower end of the sentence of three years and | | |
| | 60:06 | eligible for entry into the ISP program, which | | |
| | 60:07 | would be approximately 90 days. | | |
| | 60:08 | Now -- | | |
| | 60:09 | Q.  I can pause you there, Mr. Critchley, so | | |
| | 60:10 | we can just break it down. | | |
| | 60:11 | So in or about late 2018, you received a | | |
| | 60:12 | subsequent plea offer from the State; is that | | |
| | 60:13 | correct? | | |
| | 60:14 | A.  A written form.  Yes, it was an appearance | | |
| | 60:15 | in court, a lawyer in my office handled it, fill | | |
| | 60:16 | out a form, copied the form, asked for what's the | | |
| | 60:17 | latest plea offer, the latest plea offer is | | |
| | 60:18 | written in, and both parties signed it. | | |
| | 60:19 | Q.  And the plea offer that you received in | | |
| | 60:20 | late 2018 was substantially better than the | | |
| | 60:21 | initial plea offer that the State made at | | |
| | 60:22 | arraignment, correct? | | |
| | 60:23 | A.  It was better, certainly, yes. | | |
| | 60:24 | Q.  Okay.  And I think based on your | | |
| | 60:25 | testimony, you expect -- you would have expected | | |
| | 61:01 | that the resulting sentence would have been | | |
| | 61:02 | approximately 90 days incarceration; is that | | |
| | 61:03 | right? | | |
| | 61:04 | A.  A lot of conditions there.  The sentence | | |

NTW_000004377

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

61:05    could be anywhere between three and five years.

61:06    The sentence, which would mean -- I repeat

61:07    myself -- he would be eligible for parole if he

61:08    received three years after nine months; and if he

61:09    received five years, 12 months.

61:10    And in addition to that, they offered --

61:11    they would not object to his entry into the ISP

61:12    program.  That doesn't mean he's going to get into

61:13    it, but they would not oppose the entry.  And if

61:14    he got into the ISP program, he would be eligible

61:15    for parole in about three months -- eligible for

61:16    release in three months, but that's conditioned

61:17    upon him being accepted into the program.

61:18  Q.  And ISP --

61:19  A.  No guarantee, but the fact that the

61:20    prosecutor did not object to it, and he was a

61:21    first time offender, leads me to believe he would

61:22    have been an excellent candidate to be accepted

61:23    into that program.

61:24  Q.  What does the ISP program stand for?

61:25  A.  Intensive supervision program.

62:01  Q.  Did plea offers continue to come even

62:02    after that second plea offer in late 2018?

62:03  A.  From that offer in 2018, we were getting

62:04    ready for trial.  I was in the trial mode and he

62:05    was just preparing for trial.

62:06    And my partner, Amy Luria, was going to be

62:07    trying the case with me.  So at that point in time

62:08    we were going to trial.  I'm done with

62:09    conversations.  So if I was going to have a

62:10    conversation, primarily, it would be someone in my

62:11    office.  I'm just focusing on going to trial at

62:12    that point in time.

| 63:03 - 63:09 | **Critchley, Michael 2024-06-17** | 00:00:21 | CRITCHLEY.39 |

63:03  Q.  At some point in time as you were

63:04    preparing for trial, did you get a final plea

63:05    offer from the State?

63:06  A.  Yes, there came a plea offer, yes.

63:07    ATTORNEY WEITZMAN:  And if we can put up

63:08    Government Exhibit 4G-6.  I think you have that,

NTW_000004378

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 63:09    Mr. Marino and Mr. Critchley. | | |
| 63:12 - 63:19 | **Critchley, Michael 2024-06-17** | 00:00:19 | CRITCHLEY.40 |

63:12    A.    I have -- I do have an email dated
63:13         April 16, 2019.  Yeah.
63:14    Q.    And is this the final plea offer that you
63:15         received from the State of New Jersey in the Elvis
63:16         Parra case?
63:17    A.    I haven't read it.  It says, "The plea's
63:18         attached."  Now I'm going back to the plea offer.
63:19         This is dated April 16th.

| 63:24 - 63:25 | **Critchley, Michael 2024-06-17** | 00:00:05 | CRITCHLEY.41 |

63:24    Q.    Yeah, if you could turn to Page 3 of the
63:25         document.

| 64:04 - 64:05 | **Critchley, Michael 2024-06-17** | 00:00:03 | CRITCHLEY.42 |

64:04    Q.    And just familiarize yourself with the
64:05         document.

| 64:09 - 65:16 | **Critchley, Michael 2024-06-17** | 00:01:17 | CRITCHLEY.43 |

64:09         Do you recognize in the second -- in the
64:10         second paragraph it states:  "The State will
64:11         accept from defendant a guilty plea to Count 2 of
64:12         the indictment to third degree insurance fraud"?
64:13         Do you see that?
64:14    A.    I see that.
64:15    Q.    And in the first bullet point it says:
64:16         "The State will recommend to the sentencing court
64:17         that the defendant be sentenced to a term of
64:18         noncustodial probation."
64:19    A.    The first bullet point.  Are we looking at
64:20         the same -- now we're on different page.  Now I'm
64:21         on Page 2.
64:22         Now "The State will recommend to the
64:23         sentencing court the defendant be sentenced to a
64:24         term of noncustodial probation."  Right.  I got
64:25         that.
65:01    Q.    Can you explain to the jury what it means
65:02         that the State will recommend to the sentencing
65:03         court the defendant be sentenced to a term of
65:04         noncustodial probation?
65:05    A.    Well, in New Jersey, unfortunately, when

NTW_000004379

| DESIGNATION | SOURCE | | DURATION | ID |
|---|---|---|---|---|

| | 65:06 | you use the word probation in State court it has | | |
| | 65:07 | mutual meanings.  You can be sentenced to | | |
| | 65:08 | probation.  And as a condition to probation, | | |
| | 65:09 | receive a custodial sentence of 364 days -- up to | | |
| | 65:10 | 364 days, even though it's probation. | | |
| | 65:11 | So when you put noncustodial probation, | | |
| | 65:12 | that takes away the potential prospect of someone, | | |
| | 65:13 | even though they're pleading to probation, getting | | |
| | 65:14 | time in jail despite the probation.  So the | | |
| | 65:15 | noncustodial is important because there would be | | |
| | 65:16 | no jail term at all attached to a plea. | | |

| 67:17 - 68:16 | **Critchley, Michael 2024-06-17** | | 00:01:05 | CRITCHLEY.44 |
| | 67:17 | Q. | You received this plea offer as you were | |
| | 67:18 | | preparing for trial; is that correct? | |
| | 67:19 | A. | Yes. | |
| | 67:20 | Q. | Did you want to proceed to trial? | |
| | 67:21 | A. | Did I want to proceed to trial?  Yes, I | |
| | 67:22 | | wanted to proceed -- yes, I wanted to proceed to | |
| | 67:23 | | trial. | |
| | 67:24 | Q. | Did Elvis Parra accept the plea offer? | |
| | 67:25 | A. | Yes, he accepted the plea offer. | |
| | 68:01 | Q. | And did that avoid trial? | |
| | 68:02 | A. | Yes, it did.  What I was going to point | |
| | 68:03 | | out on the sentencing plea offer.  It says | |
| | 68:04 | | restitution is $75,000, which is a lot of money, | |
| | 68:05 | | but the first offer, you recall, the restitution | |
| | 68:06 | | they wanted was $388,000.  I won't get into it, | |
| | 68:07 | | but my -- the idea of the amount of loss was -- | |
| | 68:08 | | was a floating concept at Liberty Mutual. | |
| | 68:09 | Q. | Meaning that Liberty Mutual is willing to | |
| | 68:10 | | accept a much lower amount on this plea offer than | |
| | 68:11 | | they had initially insisted on? | |
| | 68:12 | A. | I don't know that Liberty Mutual was | |
| | 68:13 | | willing to accept.  I'm just saying what's there. | |
| | 68:14 | Q. | To your knowledge, did Senator Menendez | |
| | 68:15 | | have anything to do with the plea offer that Elvis | |
| | 68:16 | | Parra received here? | |

| 68:19 - 68:21 | **Critchley, Michael 2024-06-17** | | 00:00:03 | CRITCHLEY.45 |
| | 68:19 | A. | To my knowledge, no. | |
| | 68:20 | Q. | Do you know why the State offered this | |

NTW_000004380

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

68:21   plea offer?

| 69:01 - 69:02 | **Critchley, Michael 2024-06-17** | 00:00:03 | CRITCHLEY.46 |

69:01  A. I believe they believed they had a weak
69:02    case.

| 69:21 - 69:22 | **Critchley, Michael 2024-06-17** | 00:00:07 | CRITCHLEY.47 |

69:21  Q. Do you have any understanding as to why
69:22    they decided to offer this sentence nonetheless?

| 69:25 - 70:08 | **Critchley, Michael 2024-06-17** | 00:00:19 | CRITCHLEY.48 |

69:25  A. I believe they understood it was a weak
70:01    case.  And you can see it was trending that way,
70:02    from beginning to end.
70:03  Q. I'm sorry, I couldn't hear the last part
70:04    of that sentence.
70:05  A. It was trending that way.  The offers kept
70:06    getting better and better.
70:07  Q. And is that something you've experienced
70:08    before in State AG prosecutions?

| 70:10 - 70:10 | **Critchley, Michael 2024-06-17** | 00:00:03 | CRITCHLEY.49 |

70:10  A. Many, many, many times.

| 70:23 - 70:25 | **Critchley, Michael 2024-06-17** | 00:00:07 | CRITCHLEY.50 |

70:23  Q. Mr. Critchley, you were prepared to go to
70:24    trial in the Parra matter, correct?
70:25  A. Yes, I was.

| 71:14 - 71:17 | **Critchley, Michael 2024-06-17** | 00:00:08 | CRITCHLEY.51 |

71:14  Q. Did you hire a handwriting expert in this
71:15    case?
71:16  A. A lawyer from my office was dealing with
71:17    the handwriting expert, yes.

| 71:25 - 72:10 | **Critchley, Michael 2024-06-17** | 00:00:30 | CRITCHLEY.52 |

71:25  Q. About how much was your fee in the case,
72:01    Mr. Critchley?
72:02  A. $250,000.
72:03  Q. And I think you testified that Mr. Uribe
72:04    came -- you interviewed him.
72:05    Did he come to your office?
72:06  A. Yes, he did.
72:07  Q. And you said that as a result of -- you
72:08    asked him questions, right?

NTW_000004381

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 72:09   A.   I asked him some questions, yeah.  I don't | | |
| | 72:10        recall what they were. | | |
| 72:21 - 73:17 | **Critchley, Michael 2024-06-17** | 00:00:58 | CRITCHLEY.53 |
| | 72:21   Q.   How did he appear to you as a result of | | |
| | 72:22        the questioning that you did of him? | | |
| | 72:23   A.   As I said before, I don't think he was so | | |
| | 72:24        happy when he left. | | |
| | 72:25   Q.   When you -- when you received the ultimate | | |
| | 73:01        plea offer to a probationary sentence that | | |
| | 73:02        Mr. Weitzman went over with you, did you | | |
| | 73:03        immediately convey that to Mr. Parra? | | |
| | 73:04   A.   I believe so.  I don't know if I did or | | |
| | 73:05        someone in my office did. | | |
| | 73:06   Q.   Would it have been your practice to convey | | |
| | 73:07        that plea offer to your client immediately? | | |
| | 73:08   A.   Sure. | | |
| | 73:09   Q.   One last question.  Do you know Wael Hana? | | |
| | 73:10   A.   No, I don't. | | |
| | 73:11   Q.   Have you ever met him? | | |
| | 73:12   A.   Not to my recollection. | | |
| | 73:13   Q.   Neither -- you didn't meet him in the | | |
| | 73:14        course of your representation of Mr. Parra? | | |
| | 73:15   A.   No, I did not. | | |
| | 73:16   Q.   Or any other time? | | |
| | 73:17   A.   No. | | |
| 74:13 - 75:05 | **Critchley, Michael 2024-06-17** | 00:00:38 | CRITCHLEY.54 |
| | 74:13   Q.   Mr. Critchley, as a lawyer, are you | | |
| | 74:14        generally familiar with the types of legal motions | | |
| | 74:15        that a criminal defense attorney can file in | | |
| | 74:16        court? | | |
| | 74:17   A.   Yes. | | |
| | 74:18   Q.   Legal motions are a request for relief | | |
| | 74:19        from the Court; is that right? | | |
| | 74:20   A.   That's correct. | | |
| | 74:21   Q.   As Elvis Parra's lawyer, you filed legal | | |
| | 74:22        motions with the Court on Mr. Parra's behalf, | | |
| | 74:23        correct? | | |
| | 74:24   A.   Correct. | | |
| | 74:25   Q.   You filed a motion to dismiss the charges | | |
| | 75:01        in Mr. Parra's case, correct? | | |

NTW_000004382

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 75:02 | A. | Correct. | | |
| | 75:03 | Q. | And the motion to dismiss Mr. Parra's case | | |
| | 75:04 | | was filed before trial; is that correct? | | |
| | 75:05 | A. | Correct. | | |

| 75:16 - 76:01 | **Critchley, Michael 2024-06-17** | | | 00:00:20 | CRITCHLEY.55 |
| | 75:16 | | "The Court | | |
| | 75:17 | | denied your motion to dismiss Mr. Parra's case," | | |
| | 75:18 | | correct? | | |
| | 75:19 | A. | Correct. | | |
| | 75:20 | Q. | Are you familiar with the term selective | | |
| | 75:21 | | prosecution? | | |
| | 75:22 | A. | I am. | | |
| | 75:23 | Q. | And selective prosecution is a claim that | | |
| | 75:24 | | lawyers can make when defending a criminal case; | | |
| | 75:25 | | is that right? | | |
| | 76:01 | A. | Correct, correct. | | |

| 78:10 - 78:13 | **Critchley, Michael 2024-06-17** | | | 00:00:10 | CRITCHLEY.56 |
| | 78:10 | Q. | Mr. Critchley, you did not file any | | |
| | 78:11 | | selective prosecution motion in connection with | | |
| | 78:12 | | Mr. Parra's case, did you? | | |
| | 78:13 | A. | I didn't. | | |

| 79:16 - 80:13 | **Critchley, Michael 2024-06-17** | | | 00:00:57 | CRITCHLEY.57 |
| | 79:16 | Q. | Did you have any basis to believe that | | |
| | 79:17 | | Mr. Parra was prosecuted on the basis of his race, | | |
| | 79:18 | | ethnicity, or any other improper basis? | | |
| | 79:19 | A. | No. | | |
| | 79:20 | Q. | And you reached that conclusion after | | |
| | 79:21 | | reviewing the evidence, correct? | | |
| | 79:22 | A. | Correct.  If I had felt there was a basis | | |
| | 79:23 | | for it, I would have filed it. | | |
| | 79:24 | Q. | And you're a very experienced criminal | | |
| | 79:25 | | defense attorney, correct? | | |
| | 80:01 | A. | I'd like to think so. | | |
| | 80:02 | Q. | Before deciding what motions to file in a | | |
| | 80:03 | | criminal case, you thoroughly and carefully review | | |
| | 80:04 | | all of the evidence, correct? | | |
| | 80:05 | A. | Absolutely. | | |
| | 80:06 | Q. | And you reviewed all of the evidence in | | |
| | 80:07 | | Mr. Parra's case before deciding what motions to | | |
| | 80:08 | | file, correct? | | |

NTW_000004383

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

|  | 80:09  A.  Correct. |  |  |
|  | 80:10  Q.  And after reviewing the evidence, you did |  |  |
|  | 80:11      not file a selective prosecution motion in |  |  |
|  | 80:12      Mr. Parra's case, did you? |  |  |
|  | 80:13  A.  Correct. |  |  |
| 81:10 - 82:22 | **Critchley, Michael 2024-06-17** | 00:01:29 | CRITCHLEY.60 |
|  | 81:10  Q.  Now, in early 2019, Robert Menendez called |  |  |
|  | 81:11      you, right? |  |  |
|  | 81:12  A.  Well, I see the call refers to in March of |  |  |
|  | 81:13      2019, yes. |  |  |
|  | 81:14  Q.  And Robert Menendez called your cell |  |  |
|  | 81:15      phone, right? |  |  |
|  | 81:16  A.  Correct. |  |  |
|  | 81:17  Q.  And on that call, Menendez -- Menendez |  |  |
|  | 81:18      brought up only one case, right? |  |  |
|  | 81:19  A.  Correct. |  |  |
|  | 81:20  Q.  And that one case was Elvis Parra's |  |  |
|  | 81:21      criminal case brought by the New Jersey Attorney |  |  |
|  | 81:22      General's Office, correct? |  |  |
|  | 81:23  A.  As best I can recollect. |  |  |
|  | 81:24  Q.  You never reached out to Mr. Menendez |  |  |
|  | 81:25      about Mr. Parra's criminal case, did you? |  |  |
|  | 82:01  A.  I did not. |  |  |
|  | 82:02  Q.  Prior to this call from Menendez, had you |  |  |
|  | 82:03      ever spoken to Menendez about Mr. Parra's criminal |  |  |
|  | 82:04      case? |  |  |
|  | 82:05  A.  I did not. |  |  |
|  | 82:06  Q.  To the best of your recollection, Menendez |  |  |
|  | 82:07      did not tell you how he knew about Mr. Parra's |  |  |
|  | 82:08      criminal case, did he? |  |  |
|  | 82:09  A.  To the best of my recollection, that's |  |  |
|  | 82:10      correct. |  |  |
|  | 82:11  Q.  And this call from Menendez about |  |  |
|  | 82:12      Mr. Parra's criminal case was short, right? |  |  |
|  | 82:13  A.  Under two minutes. |  |  |
|  | 82:14  Q.  Too short to get into the facts of the |  |  |
|  | 82:15      case, right? |  |  |
|  | 82:16  A.  I believe that's correct. |  |  |
|  | 82:17  Q.  The call was too short to discuss the |  |  |
|  | 82:18      evidence in the case, right? |  |  |

NTW_000004384

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

82:19  A.  That seems logical.
82:20  Q.  The call was too short to discuss what
82:21      motions might be viable in the case, right?
82:22  A.  That's for sure.

| 83:13 - 83:24 | **Critchley, Michael 2024-06-17** | 00:00:24 | CRITCHLEY.61 |

83:13  Q.  To the best of your recollection, did you
83:14      talk about the motions you could file in
83:15      Mr. Parra's case with Menendez on that call?
83:16  A.  No, I did not.
83:17  Q.  To the best of your recollection, did you
83:18      share the motions you filed in Mr. Parra's case
83:19      with Menendez?
83:20  A.  I did not.
83:21  Q.  To the best of your recollection, did you
83:22      talk about the motions you filed in Mr. Parra's
83:23      case with Menendez on that call?
83:24  A.  I did not.

| 84:18 - 85:04 | **Critchley, Michael 2024-06-17** | 00:00:26 | CRITCHLEY.62 |

84:18  Q.  To the best of your recollection, on that
84:19      call with Menendez did you ever say that there was
84:20      discrimination against Latino truckers in
84:21      Mr. Parra's case?
84:22  A.  I did not.
84:23  Q.  Did you ever talk about selective
84:24      prosecution with Menendez on that call?
84:25  A.  I did not.
85:01  Q.  Did you ever talk about selective
85:02      prosecution with anyone in connection with
85:03      Mr. Parra's case?
85:04  A.  No.

| 85:12 - 85:24 | **Critchley, Michael 2024-06-17** | 00:00:36 | CRITCHLEY.63 |

85:12  Q.  To the best of your recollection, on that
85:13      call with Menendez did you ever say that Latino
85:14      truckers were being selectively prosecuted?
85:15  A.  I did not.
85:16  Q.  To the best of your recollection, on that
85:17      call with Menendez did you ever say that Latino
85:18      truckers were being treated differently than other
85:19      truckers in New Jersey?
85:20  A.  No.

NTW_000004385

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | 85:21  Q.  When Menendez called you about Mr. Parra's | | |
| | 85:22      case, to the best of your recollection, did he ask | | |
| | 85:23      you about the facts of the case? | | |
| | 85:24  A.  To the best of my recollection, no. | | |
| 86:14 - 87:04 | **Critchley, Michael 2024-06-17** | 00:00:44 | CRITCHLEY.64 |
| | 86:14  Q.  When Menendez called you about Mr. Parra's | | |
| | 86:15      case, to the best of your recollection, in | | |
| | 86:16      substance, did he ask you for facts about whether | | |
| | 86:17      or not the prosecution was selective or | | |
| | 86:18      discriminatory? | | |
| | 86:19  A.  No.  To the best of my recollection. | | |
| | 86:20  Q.  When Menendez called you about Mr. Parra's | | |
| | 86:21      case, to the best of your recollection, in | | |
| | 86:22      substance, did he ask you if you had evidence that | | |
| | 86:23      similarly situated individuals were treated | | |
| | 86:24      differently by the New Jersey Attorney General's | | |
| | 86:25      Office? | | |
| | 87:01  A.  To the best of my recollection, no. | | |
| | 87:02  Q.  To the best of your recollection, did | | |
| | 87:03      Menendez say how he became aware of Mr. Parra's | | |
| | 87:04      case? | | |
| 87:07 - 88:05 | **Critchley, Michael 2024-06-17** | 00:00:56 | CRITCHLEY.65 |
| | 87:07  A.  I don't believe so. | | |
| | 87:08  Q.  Now, you were critical of the prosecution | | |
| | 87:09      against Mr. Parra, correct? | | |
| | 87:10  A.  Much so. | | |
| | 87:11  Q.  You were critical of the case against | | |
| | 87:12      Mr. Parra, in part because you thought it should | | |
| | 87:13      have been a civil case instead of a criminal case, | | |
| | 87:14      correct? | | |
| | 87:15  A.  Correct. | | |
| | 87:16  Q.  And you were critical of the case against | | |
| | 87:17      Mr. Parra, in part because it appeared to you that | | |
| | 87:18      the New Jersey Attorney General's Office was being | | |
| | 87:19      used by insurance companies to collect private | | |
| | 87:20      debt, correct? | | |
| | 87:21  A.  I couldn't say it better. | | |
| | 87:22  Q.  Now, from your perspective, this case | | |
| | 87:23      dealt with the -- whether the people who worked | | |
| | 87:24      for Mr. Parra were W-2 employees or independent | | |

NTW_000004386

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

87:25    contractors, right?
88:01  A.  That's correct.
88:02  Q.  And from your perspective, that was a
88:03    matter that should have been handled civilly in
88:04    Mr. Parra's case, not criminally, correct?
88:05  A.  Correct.

| 88:22 - 88:25 | **Critchley, Michael 2024-06-17** | 00:00:10 | CRITCHLEY.66 |
|---|---|---|---|

88:22  Q.  To the best of your recollection, on this
88:23    call did Menendez talk to you about anything other
88:24    than Mr. Parra's criminal case?
88:25  A.  To the best of my recollection, no.

| 89:05 - 89:10 | **Critchley, Michael 2024-06-17** | 00:00:12 | CRITCHLEY.67 |
|---|---|---|---|

89:05  Q.  You testified that you met Mr. Menendez
89:06    approximately 30 years ago; is that right?
89:07  A.  Approximately, yes.
89:08  Q.  You were a practicing lawyer for all of
89:09    those years, correct?
89:10  A.  Yes, I was.

| 89:18 - 89:19 | **Critchley, Michael 2024-06-17** | 00:00:07 | CRITCHLEY.68 |
|---|---|---|---|

89:18  Q.  The question was:  How common was it for
89:19    him to call you about pending criminal cases?

| 89:22 - 90:10 | **Critchley, Michael 2024-06-17** | 00:00:44 | CRITCHLEY.69 |
|---|---|---|---|

89:22  A.  How common was it? It's tough to answer
89:23    that question.  It was not common.  He didn't call
89:24    on every case, but as I said before, sometimes the
89:25    cases I had had some publicity attached to it.  It
90:01    would not be uncommon to have a conversation about
90:02    those cases.  Was it a common occurrence, no.
90:03  Q.  As a general matter, over the course of
90:04    your career, have people, including politicians,
90:05    asked you about some of your cases that received a
90:06    lot of attention or publicity?
90:07  A.  Absolutely.
90:08  Q.  Did you have a specific recollection of
90:09    any such conversations with Menendez?
90:10  A.  Specific recollection, no.

| 91:06 - 91:23 | **Critchley, Michael 2024-06-17** | 00:00:40 | CRITCHLEY.70 |
|---|---|---|---|

91:06  Q.  Well, let me ask you this:  Mr. Critchley,
91:07    you testified that over the course of your career,

NTW_000004387

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 91:08    people, including politicians, have asked you | | |
| | 91:09    about some of your cases that have received a lot | | |
| | 91:10    of attention or publicity; is that right? | | |
| | 91:11  A.  That's correct. | | |
| | 91:12  Q.  Did Elvis Parra's case get a lot of | | |
| | 91:13    attention or publicity at the time Menendez called | | |
| | 91:14    you about his case in early 2019? | | |
| | 91:15  A.  When you say "a lot of publicity," I | | |
| | 91:16    believe they got a press release from the attorney | | |
| | 91:17    general's office.  Do I recall specifically, no, | | |
| | 91:18    but as a matter of practice and procedure, they | | |
| | 91:19    issued press releases every time they had an | | |
| | 91:20    indictment. | | |
| | 91:21  Q.  Did it otherwise get a lot of attention or | | |
| | 91:22    publicity at the time Menendez called you in early | | |
| | 91:23    2019? | | |
| 91:25 - 92:14 | **Critchley, Michael 2024-06-17** | 00:00:37 | CRITCHLEY.71 |
| | 91:25  A.  It did not get a lot of publicity, | | |
| | 92:01    correct. | | |
| | 92:02  Q.  Other than this call about Mr. Parra's | | |
| | 92:03    case, sitting here today, do you have a specific | | |
| | 92:04    recollection of Menendez calling you about any | | |
| | 92:05    other particular case? | | |
| | 92:06  A.  I don't. | | |
| | 92:07  Q.  To the best of your recollection, on this | | |
| | 92:08    call did Menendez mention the New Jersey Attorney | | |
| | 92:09    General Gurbir Grewal? | | |
| | 92:10  A.  I don't recall that. | | |
| | 92:11  Q.  And to the best of your recollection, on | | |
| | 92:12    this call did Menendez tell you he planned to call | | |
| | 92:13    Grewal about Mr. Parra's criminal case? | | |
| | 92:14  A.  I don't recall that. | | |
| 92:25 - 93:02 | **Critchley, Michael 2024-06-17** | 00:00:09 | CRITCHLEY.72 |
| | 92:25  Q.  To the best of your recollection, on this | | |
| | 93:01    call did Menendez tell you he had called Grewal | | |
| | 93:02    about Mr. Parra's criminal case? | | |
| 93:05 - 93:12 | **Critchley, Michael 2024-06-17** | 00:00:20 | CRITCHLEY.73 |
| | 93:05  A.  To the best of my recollection, no.  As I | | |
| | 93:06    said before, I don't recall much of what was said | | |
| | 93:07    between he and I during that conversation. | | |

NTW_000004388

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

93:08 Q. To the best of your recollection, did
93:09    Menendez at any time ever tell you that he called
93:10    the New Jersey Attorney General about any pending
93:11    criminal cases?
93:12 A. I don't recall that.

| 93:21 - 94:15 | **Critchley, Michael 2024-06-17** | 00:00:48 | CRITCHLEY.74 |

93:21 Q. Now, you testified earlier that you
93:22    reached out to Grewal, correct?
93:23 A. I did.
93:24 Q. You did not mention Mr. Parra's criminal
93:25    case by name to Grewal, did you?
94:01 A. I did not.
94:02 Q. You didn't mention any particular case to
94:03    Grewal, did you?
94:04 A. I don't recall doing that, no.
94:05 Q. You were calling Grewal about your general
94:06    concerns relating to prosecutions by the Office of
94:07    Insurance Fraud prosecutor within the New Jersey
94:08    Attorney General's Office, right?
94:09 A. Yes, what I perceived to be abuses.
94:10 Q. On this call, did you mention anything
94:11    about discrimination to Grewal?
94:12 A. I did not.
94:13 Q. On this call, did you mention anything
94:14    about selective prosecution to Grewal?
94:15 A. I did not.

| 94:21 - 95:04 | **Critchley, Michael 2024-06-17** | 00:00:21 | CRITCHLEY.75 |

94:21 Q. You would agree, Mr. Critchley, on --
94:22    during this conversation you had with Mr. Grewal,
94:23    you spoke and he listened, correct?
94:24 A. That's a fair -- I think that's a fair
94:25    depiction.
95:01 Q. To the best of your recollection, Grewal
95:02    did not respond to your concerns, did he?
95:03 A. No, he didn't say anything specific,
95:04    that's for sure.

| 97:02 - 97:10 | **Critchley, Michael 2024-06-17** | 00:00:25 | CRITCHLEY.76 |

97:02 Q. From a -- putting aside the legal
97:03    defenses --
97:04 A. Okay.

NTW_000004389

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

| | 97:05   Q.  -- are you familiar with the policy issues | | |
| | 97:06        when a legislator looks at how the criminal | | |
| | 97:07        justice system prosecutes particular companies or | | |
| | 97:08        individuals in a way that affects a selective | | |
| | 97:09        prosecution across the board?  Are you familiar | | |
| | 97:10        with that issue? | | |

| 97:12 - 98:04 | **Critchley, Michael 2024-06-17** | 00:00:51 | CRITCHLEY.77 |
| | 97:12   A.  Let me see if I can answer the question. | | |
| | 97:13        I think someone who was not familiar specifically | | |
| | 97:14        with the law of selective prosecution sometimes | | |
| | 97:15        would conflate when I use the term, abuse of | | |
| | 97:16        prosecution, and it's difficult for a common | | |
| | 97:17        layperson to understand the distinction.  But what | | |
| | 97:18        I like to say, if I can explain it, every | | |
| | 97:19        selective prosecution is an abuse of prosecution, | | |
| | 97:20        but every abuse of prosecution is not a selective | | |
| | 97:21        prosecution.  I don't know if that makes sense. | | |
| | 97:22   Q.  It does, but from a broader perspective, | | |
| | 97:23        when you zoom out and look at the criminal justice | | |
| | 97:24        system -- | | |
| | 97:25   A.  Yeah. | | |
| | 98:01   Q.  -- would you agree with me that a public | | |
| | 98:02        officer or official could have a different view of | | |
| | 98:03        selective prosecution than the way a criminal | | |
| | 98:04        defense attorney looks at it? | | |

| 98:08 - 98:08 | **Critchley, Michael 2024-06-17** | 00:00:03 | CRITCHLEY.78 |
| | 98:08   A.  Absolutely. | | |

| 106:13 - 106:15 | **Critchley, Michael 2024-06-17** | 00:00:09 | CRITCHLEY.79 |
| | 106:13   Q.  Did the prosecution of Elvis Parra risk | | |
| | 106:14        the E&K Trucking business?  The viability of the | | |
| | 106:15        business? | | |

| 106:18 - 106:21 | **Critchley, Michael 2024-06-17** | 00:00:11 | CRITCHLEY.80 |
| | 106:18   A.  I think that's a fair assessment. | | |
| | 106:19   Q.  And the prosecution of Elvis Parra | | |
| | 106:20        therefore risked putting those 95 truckers out of | | |
| | 106:21        business; is that correct? | | |

| 106:23 - 106:23 | **Critchley, Michael 2024-06-17** | 00:00:02 | CRITCHLEY.81 |
| | 106:23   A.  That's a fair assessment. | | |

| 106:24 - 107:02 | **Critchley, Michael 2024-06-17** | 00:00:08 | CRITCHLEY.82 |

NTW_000004390

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|

106:24  Q.  Okay.  When -- you were asked questions
106:25      about your call with Senator Menendez.
107:01      Do you recall that?
107:02  A.  I do.

CRITCHLEY.82

| 107:17 - 107:19 | **Critchley, Michael 2024-06-17** | 00:00:09 | CRITCHLEY.83 |

107:17  Q.  Okay.  In the two-minute conversation that
107:18      you had with him, do you recall that you and he
107:19      exchanged your views of the Elvis Parra case?

| 107:22 - 108:04 | **Critchley, Michael 2024-06-17** | 00:00:21 | CRITCHLEY.84 |

107:22  A.  I don't recollect specifically, but to the
107:23      extent that I came away with a high-level
107:24      understanding that thematically he agreed with me
107:25      about the case, that would be some basis of that,
108:01      and the theme we agreed on, from my understanding,
108:02      was that the prosecution of Elvis Parra was an
108:03      abuse of prosecution; not a selective prosecution,
108:04      but an abuse of prosecution.

| 108:16 - 109:05 | **Critchley, Michael 2024-06-17** | 00:00:35 | CRITCHLEY.85 |

108:16  Q.  Okay.  You were asked about your call with
108:17      Attorney General Grewal.
108:18      Do you recall that?
108:19  A.  I do.
108:20  Q.  And you did not mention the Elvis Parra
108:21      case in particular, you said?
108:22  A.  I don't recall asking -- mentioning any
108:23      specifics about the case.
108:24  Q.  Do you recall whether Attorney General
108:25      Grewal said whether he'd look into the insurance
109:01      fraud prosecutors and your complaint about it?
109:02  A.  I don't recall.
109:03  Q.  Do you recall whether Attorney General
109:04      Grewal cut you off and prevented you from
109:05      articulating your concerns?

| 109:07 - 109:07 | **Critchley, Michael 2024-06-17** | 00:00:02 | CRITCHLEY.86 |

109:07  A.  I don't recall that.

| 109:19 - 110:06 | **Critchley, Michael 2024-06-17** | 00:00:33 | CRITCHLEY.87 |

109:19  Q.  You were asked some questions about
109:20      whether you recalled any particular conversations
109:21      with Senator Menendez about other prior criminal

**CRITCHLEY - 004**

| DESIGNATION | SOURCE | DURATION | ID |
|---|---|---|---|
| | 109:22    cases? | | |
| | 109:23  A.  Yes. | | |
| | 109:24  Q.  Did you ever represent someone named | | |
| | 109:25    Bridget Kelly? | | |
| | 110:01  A.  Yes, I did. | | |
| | 110:02  Q.  And was that a particular case in which | | |
| | 110:03    you recall Senator Menendez calling you at some | | |
| | 110:04    point? | | |
| | 110:05  A.  That's probably a case, no doubt, we had a | | |
| | 110:06    discussion about it. | | |
| 110:21 - 111:10 | **Critchley, Michael 2024-06-17** | 00:00:35 | CRITCHLEY.88 |
| | 110:21  Q.  Just briefly, Mr. Critchley, do you recall | | |
| | 110:22    being asked questions about the Bridget Kelly case | | |
| | 110:23    on redirect? | | |
| | 110:24  A.  I do. | | |
| | 110:25  Q.  Was the Bridget Kelly case the famous | | |
| | 111:01    Bridgegate case? | | |
| | 111:02  A.  It was. | | |
| | 111:03  Q.  Do you recall on redirect being asked | | |
| | 111:04    questions about policy concerns versus legal | | |
| | 111:05    motions regarding selective prosecution? | | |
| | 111:06  A.  I do. | | |
| | 111:07  Q.  To the best of your recollection, in | | |
| | 111:08    substance, did Robert Menendez mention any policy | | |
| | 111:09    issues when he called you about Mr. Parra's case? | | |
| | 111:10  A.  To the best of my recollection, he didn't. | | |

| | | |
|---|---|---|
| Menendez Designations | 00:36:32 | |
| Government Designations | 00:11:20 | |
| Hana Designations | 00:01:43 | |
| **TOTAL RUN TIME** | **00:49:35** | |

NTW_000004392