Gmail

Barry Coburn <barry@coburngreenbaum.com>

## Re: proffers
1 message

**Barry Coburn** <barry@coburngreenbaum.com>  Fri, Apr 4, 2025 at 4:51 AM
To: Daniel Richenthal <Daniel.Richenthal@usdoj.gov>, Paul Monteleoni <Paul.Monteleoni@usdoj.gov>, Lara Pomerantz <Lara.Pomerantz@usdoj.gov>, "Ghosh, Catherine (USANYS)" <Catherine.Ghosh@usdoj.gov>
Cc: Sarah Schwietz <sarah@coburngreenbaum.com>, Marc Eisenstein <marc@coburngreenbaum.com>
Bcc: Barry Coburn <barry@coburngreenbaum.com>

In addition, we anticipate Mr. Hana would testify to the following:

*I came to the United States from Egypt in 2006 as part of a visa lottery program and worked hard to learn the language and to build a business here. I developed friendships with fellow immigrants and people from the Middle East, with whom I shared a cultural connection, and I remained active in the Coptic Christian community. I made a life for myself in the United States and became a U.S. citizen in 2012.*
*One of the people I became friends with some 15 years ago was Nadine Arslanian, who was like a sister to me for many years. Like any close friends, we had meals together, exchanged gifts, and helped each other out when one of us was down on his or her luck. But we did these things not in expectation of something in return, but because it is what friends do. I knew that Nadine was divorced and had been in an abusive relationship, and particularly after she was hospitalized in 2017, I helped her out financially. For example, I tried to get her involved in my businesses so she could have a steady job and not have to rely on an abusive ex-boyfriend. I had been studying the halal business and talking with contacts in the Egyptian government about providing certification services for products imported to Egypt. I created a company, IS EG Halal Certified, Inc., in 2017, when it appeared from those discussions that Egypt may move forward with my proposal. Specifically, because I am a Christian, I proposed that my company would partner with the Egyptian government to handle the administrative component of certifying products as halal, and that the government would provide a specialist veterinarian and sheikh to ensure compliance with the technical specifications required by the Koran and Egypt. The current government has been trying to root out the Muslim Brotherhood from Egypt for years (since President el-Sisi took power in 2014); the Brotherhood was extremely oppressive to Coptic Christians when it was in power, and I thought removing the halal business from religious groups was a good business opportunity for me.*
*I was formally awarded the contract with an Egyptian government-owned entity, Medi Trade Co., in May 1, 2019, after an audit confirmed that the existing certifiers in the U.S. were not doing their job. And to date, including since the trial in this case, this is the contractual arrangement I maintain with the Egyptian government, memorialized most recently in an April 2021 agreement between my company and a joint stock company in Egypt owned*
Case 1:23-cr-00490-SHS Document 628 Filed 11/08/24 Page 41 of 83

Hana, Wael 40 P8717563 - DiMaria, Nicolo
*by three Egyptian government ministries: technical experts are seconded to IS EG Halal Certified, Inc., and my company oversees the administrative components of halal certification with thirty percent of sales from certificates coming to IS EG Halal and seventy percent going to the Egyptian government. I have carefully built this business, learning from past mistakes in prior ventures (mistakes, resulting in business setbacks, which the Government unfairly says shows I was unqualified to build another business), and developed a professional operation with exceptional staff. My company has now expanded internationally to include offices in Latin America, Australia, New Zealand, Germany, India, and China.*

I originally offered Nadine a job working in my office in New Jersey when it opened, but she had started dating Senator Menendez and traveling with him and did not want a typical stationary office job that she needed to report to eight hours every day. So she never ended up being hired, and I accordingly did not pay her. But Nadine continued to communicate to me that she was having financial trouble, so I offered her a consulting role several months later and anticipated that she would assist with setting up international offices as the company expanded from the U.S and Latin America to India, Australia, Germany, and beyond. We negotiated an agreement and set a term as a means of ensuring for some consideration of her performance after three months. In September, 2019, she had some communications with a colleague of mine in Uruguay, Carolina Silvarredonda, but ultimately, and repeatedly, Nadine did not deliver when she said she would, so I put someone else on the job and decided not to renew her contract. Although I could have terminated her contract early, she was my friend and I paid her what I had agreed under the consulting agreement (three months at $10,000 per month) and hoped Nadine and I would remain friends, but I decided that I could not rely on her professionally and did not think that we should have a business relationship after that experience.

Even earlier in 2019, she told me that she was behind on her mortgage payments, and because, as a I said earlier, I wanted to help her out when she was in financial difficulty, I gave her a loan with no interest because that is what I believe friends do. We even had a promissory note drawn up by an attorney, and although I know Nadine thought that was too formal for a loan between friends, I continue to believe that Nadine understood it to be a loan and intended to pay it back. Indeed, she did pay it back when she was able to.

While all of this was going on, Nadine started dating the senator for New Jersey, Robert Menendez in 2018. In fact, she came to a couple of meetings I had in Washington D.C. with Egyptian officials and the Senator because she wanted to see him early in their relationship. He later became part of our social group through her and we had some dinners together, though we were never really friends (he didn't even have my phone number, for
Case 1:23-cr-00490-SHS Document 628 Filed 11/08/24 Page 42 of 83

Hana, Wael 41 P8717563 - DiMaria, Nicolo

example, and I usually communicated with him through Nadine just because that is my friend – not because I was trying to hide something). But as a U.S. citizen and resident of New Jersey, where my company was also incorporated, he was also my senator and my representative (in Arabic, I would call him "my man"), regardless of whether he was dating or eventually married to my friend. When I started meeting with him, I wanted him to understand my country of origin better, including the impact that the Muslim Brotherhood had on my community and the possibility for better relations between the U.S. and the current Egyptian government. I introduced him to people I knew in the Egyptian embassy and attended social dinners with them and Nadine – all contacts that I understand the Senator's own staff on the Senate Foreign Relations Committee recommended he meet with, independent of me. I shared with him and Nadine points about Egypt's position with respect to particular policy issues, including that Egypt bears a disproportionate burden in maintaining security and stability in the region with respect to Libya, but maintains an ongoing commitment to bilateral relations with the U.S., which I believe is true and hoped the Senator would agree with and recognize in his interactions with colleagues and Egyptian officials. But to be clear, I never gave anything to Senator Menendez or Nadine to get him to agree with this or any other position regarding Egypt (honestly, I did not think that what I was telling him was particularly controversial); I was just working with my representative on issues that are important to me regarding Egypt – a country where most of my family continue to reside.

At trial, there was much discussion of information that was supposedly non-public and shared by Senator Menendez with Nadine and me – specifically

falling into two categories: the number of embassy employees in Cairo and information about congressional approval of arms sales to Egypt. The idea that providing this information to me means that I was conspiring to make Senator Menendez an agent of Egypt is, honestly, complete nonsense. Egypt knows who is working in embassies in Cairo – if Egyptian, they pay taxes and have health insurance; if American, they have records of their entry and position in the country. Egypt did not ask me to get this information from the Senator and would have no reason to do so. I had previously talked with the Senator, Nadine, and Ahmed Helmy about the number of Egyptians who worked at the US embassy who were also members of the Muslim Brotherhood, and he shared it with me to demonstrate that the number of Egyptians there overall was not as high as I had assumed. I shared that with Ahmed Helmy, who was at the meeting where I raised this issue, to let him know the follow up. In any event, the information about U.S. employees is publicly published by the U.S. government on a regular basis and the number of staff, whether Americans or Egyptians, does not change materially over time. With respect to the information on the ban of small arms sales to Egypt being lifted, that too was not secret information – in fact, it appears from the evidence at trial that it was almost immediately made public to Egypt and one of its lobbyists. But at the time, I had been
Case 1:23-cr-00490-SHS Document 628 Filed 11/08/24 Page 43 of 83

Hana, Wael 42 P8717563 - DiMaria, Nicolo
submitting responses to Requests for Quotations and was hoping to win a contract for some of these sales, so I had a commercial interest in this information. Indeed, I knew that the U.S. and Egypt have a longstanding and active defense partnership, which included the U.S.'s regular grants of military financing and arms sales to Egypt for decades. But I certainly did not bribe the Senator to get it. And the fact that he shared it with me as one of his constituents does not even begin to suggest that he was acting at the direction or under the control of Egypt as an agent. And even beyond that, this was all long before I was awarded the halal contract that the Government incorrectly alleges was something I bribed the Senator to support, in order to funnel bribes to the Senator and his wife.
When I was actually later awarded the contract in 2019, the USDA's Foreign Agriculture Service published a report regarding my company's status as the sole halal certifier for imports into Egypt. I thought this was out of place for them to be commenting negatively about my company and a decision that was not within their purview. Senator Menendez openly and appropriately made a call expressing concern that the report was unfair towards my New Jersey business, which Egypt had selected in its sole discretion. I never gave Senator Menendez or Nadine anything in exchange for this – let alone the envelopes of cash or large gold bars that the Government falsely suggested came from me at trial. I consider that just part of his job as my representative.
In fact, I never gave Senator Menendez or Nadine cash or kilogram gold bars at all. Unsurprisingly, my fingerprints were not found on any of the cash or gold at their residence. And I certainly didn't ask anyone to pass cash or gold to them – in fact, Nader Moussa, who the Government suggested (but in no way proved) I used to give cash to Nadine, told the Government that this did not happen – something that the Government did not disclose to the Court or jury. The gifts I did give to Nadine and Bob, for example, an air purifier, an exercise bike, gift baskets of cigars and alcohol at Christmas, or treating them to dinner, were not in exchange for anything. They were just gifts to a long-time friend and her husband.
As for Jose Uribe paying for a car for Nadine and trying to get the Senator to do something illegal with respect to his insurance scams, I had nothing to do with any of that. Jose testified that he assumed I was going to do something improper with Nadine through the Senator to "stop and kill" the investigation, but that did not happen and was certainly never my intention. In fact, that was the phrase used by our mutual friend and attorney, Andy Aslanian, who initially represented Jose's "daughter," Anna Peguero. All I did was try to help them get an attorney to legally deal with Elvis Parra's case and the investigation of Peguero and case when I learned that Jose was concerned about these issues. I knew that Nadine had a referral for an

*attorney other than Andy and tried to coordinate sharing information
among Nadine, Andy, and Jose in order to help someone who I thought was
Case 1:23-cr-00490-SHS Document 628 Filed 11/08/24 Page 44 of 83*

*Hana, Wael 43 P8717563 - DiMaria, Nicolo
my friend through legitimate means. Beyond that, I didn't know what was
going on with it, including when he hired new counsel. I certainly had no
idea that Jose was paying for a car for Nadine, though of course I knew that
she didn't have one and asked Fred Daibes to let her borrow one around
the same time. But I was never a part of Jose and Nadine's agreement. Nor
was I ever given any payment of cash by Jose or his associates, and I never
discussed having Nadine or the Senator do anything to assist with any
investigation or prosecution. I had nothing to do with that case.
The same is true of the alleged schemes involving Fred Daibes and
influencing the DNJ prosecution and a development involving Qatar – and
though there was no testimony or evidence that I was involved in those
allegations, I was charged in one large conspiracy involving them. In any
event, I want to be clear that I had nothing to do with any of those events,
nor did I even know of them at the time.*

Barry Coburn
Coburn, Greenbaum & Eisenstein PLLC
1710 Rhode Island Avenue, NW
Second Floor
Washington, DC  20036
Universal direct dial (work and cell):  202-643-9472
Firm main number:  202-630-2844
Fax:  866-561-9712 (toll-free)
www.coburngreenbaum.com

On Thu, Apr 3, 2025 at 10:35 PM Barry Coburn <barry@coburngreenbaum.com> wrote:
> Hello government, per my letter to the Court of a few hours ago, here is a start to our more detailed defense witness proffers.  We will continue to enhance and refine them tomorrow and over the weekend, in accordance with my letter.  By the end of the weekend, we will make a unitary, consolidated set of more detailed defense proffers available so that the government can evaluate them all together.  We also will respond further to Dan's email of yesterday about these proffers.  Best regards, Barry
>
> Barry Coburn
> Coburn, Greenbaum & Eisenstein PLLC
> 1710 Rhode Island Avenue, NW
> Second Floor
> Washington, DC  20036
> Universal direct dial (work and cell):  202-643-9472
> Firm main number:  202-630-2844
> Fax:  866-561-9712 (toll-free)
> www.coburngreenbaum.com

**Wael Hana**: Would testify about the reasons he hired Nadine as a consultant, the work she did for IS EG Halal while consulting, and why he did not terminate their consulting arrangement early. Additionally, he would testify about the mortgage loan he provided to Nadine and the gifts he gave her over the course of their friendship. He would also testify about the constituent services he sought and received from Robert Menendez.

**Katia Tabourian**: Would testify about the Defendant's family history with gold and jewelry, personality (including her attitude toward gift-giving and receiving), and her character and reputation for honesty and truthfulness, in addition to other relevant character traits. Testimony would include information about Nadine's sources of income following her first divorce, Nadine's luxury belongings, and gold and other luxury gifts received on various special occasions. Testimony would also include information about how Nadine and her family catalogued and listed their gifts and valuable belongings.

**Jamela Maali:** Would testify about her experience working with Fred Daibes, her knowledge of gift giving from Mr. Daibes to Nadine Menendez, his reputation for gift giving, and her knowledge of Mr. Daibes' interest in owning Ms. Menendez's home. She would further testify about Ms. Menendez's interest in looking to purchase a new home in early 2022.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered by Coburn, Barry on 4/3/2025 at 8:05 PM EDT and filed on 4/3/2025

| | |
|---|---|
| **Case Name:** | USA v. MENENDEZ |
| **Case Number:** | [1:23-cr-00490-SHS](#) |
| **Filer:** | Dft No. 2 - Nadine Menendez |
| **Document Number:** | [816](#) |

**Docket Text:**
**LETTER by Nadine Menendez addressed to Judge Sidney H. Stein from Barry Coburn dated 04/03/2025 re: Defense Witness Proffers (Coburn, Barry)**

**1:23-cr-00490-SHS-2 Notice has been electronically mailed to:**

Adam Fee &nbsp &nbsp adamfee@paulhastings.com, hectordurant@paulhastings.com, paulgross@paulhastings.com, tatianathomas@paulhastings.com

Andrew James Marino &nbsp &nbsp Amarino@gibbonslaw.com

Ann M. St. Peter-Griffith &nbsp &nbsp astpetergriffith@kasowitz.com, courtnotices@kasowitz.com

Anne Michelle Collart &nbsp &nbsp acollart@gibbonslaw.com, nmitchell@gibbonslaw.com, tthomas@gibbonslaw.com

Avi Weitzman &nbsp &nbsp aviweitzman@paulhastings.com, DennisCairns@paulhastings.com, henryfinkelstein@paulhastings.com, ritafishman@paulhastings.com

Barry Coburn &nbsp &nbsp barry@coburngreenbaum.com

Catherine Elaine Ghosh &nbsp &nbsp catherine.ghosh@usdoj.gov, CaseView.ECF@usdoj.gov, USANYS.ECF@USDOJ.GOV

Cesar De Castro &nbsp &nbsp cdecastro@cdecastrolaw.com

Christina A. Clark &nbsp &nbsp christina.clark3@usdoj.gov

Christina LaBruno &nbsp &nbsp clabruno@gibbonslaw.com

Daniel Charles Richenthal &nbsp &nbsp daniel.richenthal@usdoj.gov, CaseView.ECF@usdoj.gov, usanys.ecf@usdoj.gov

Daniel J. Fetterman &nbsp &nbsp dfetterman@kasowitz.com, autodocket@kasowitz.com, courtnotices@kasowitz.com

Elena Cicognani &nbsp &nbsp ecicognani@gibbonslaw.com

Eli Jacob Mark &nbsp &nbsp eli.mark@usdoj.gov, CaseView.ECF@usdoj.gov, USANYS.ECF@USDOJ.GOV

Fria Rohinton Kermani &nbsp &nbsp FKermani@kasowitz.com, courtnotices@kasowitz.com

Jacob Moshe Roth &nbsp &nbsp yaakster@gmail.com, courtalert@jonesday.com

Jessica L. Guarracino &nbsp &nbsp jguarracino@gibbonslaw.com

Kelsey A Ball &nbsp &nbsp kball@gibbonslaw.com

Lara Elizabeth Pomerantz &nbsp &nbsp Lara.Pomerantz@usdoj.gov, CaseView.ECF@usdoj.gov, USANYS.ECF@USDOJ.GOV

Lawrence S. Lustberg &nbsp &nbsp llustberg@gibbonslaw.com, ktolson@gibbonslaw.com, Mbrech@gibbonslaw.com

Marc Jason Eisenstein &nbsp &nbsp marc@coburngreenbaum.com

Marc E. Kasowitz &nbsp &nbsp MEKcourtnotices@kasowitz.com, autodocket@kasowitz.com, courtnotices@kasowitz.com

Paul Gross &nbsp &nbsp paulgross@paulhastings.com, ageritano@wsgr.com

Paul Michael Monteleoni &nbsp &nbsp paul.monteleoni@usdoj.gov, CaseView.ECF@usdoj.gov, USANYS.ECF@USDOJ.GOV

Ricardo Solano , Jr &nbsp &nbsp rsolano@gibbonslaw.com

Rita A Fishman &nbsp &nbsp ritafishman@paulhastings.com

Robert David Luskin &nbsp &nbsp robertluskin@paulhastings.com

Sarah Schwietz &nbsp &nbsp sarah@coburngreenbaum.com

Seth Hugh Agata &nbsp &nbsp sagata@cdecastrolaw.com

Shannon Michael McManus &nbsp &nbsp smcmanus@cdecastrolaw.com

Valerie Alice Gotlib &nbsp &nbsp valerie@gotliblaw.com, vgotlibecf@gmail.com

**1:23-cr-00490-SHS-2 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=4/3/2025] [FileNumber=32812687-0
] [42b28a4340f5cabee6512b755371add4d79965f24db056cce7915b0647b619d4dc3
09ca8c45554bd3b23d2dce012de0491881d7bf13d5f2af61719b7151aeb2a]]