

**Barry Coburn <barry@coburngreenbaum.com>**

## responses to series of emails from the government
1 message

**Barry Coburn** <barry@coburngreenbaum.com>                                                 Sun, Apr 6, 2025 at 6:49 AM
To: Daniel Richenthal <Daniel.Richenthal@usdoj.gov>, Paul Monteleoni <Paul.Monteleoni@usdoj.gov>, Lara Pomerantz <Lara.Pomerantz@usdoj.gov>, "Ghosh, Catherine (USANYS)" <Catherine.Ghosh@usdoj.gov>, Sarah Schwietz <sarah@coburngreenbaum.com>, Marc Eisenstein <marc@coburngreenbaum.com>
Bcc: Barry Coburn <barry@coburngreenbaum.com>

ACCUMULATED EMAILS FROM THE GOVERNMENT ON SATURDAY, APRIL 5, 2025, WITH MY RESPONSES INTERLINEATED IN CAPITAL LETTERS BELOW.

**Richenthal, Daniel (USANYS)**        Sat, Apr 5, 4:39 PM (13 hours ago)
to me, Sarah, Marc, Lara, Catherine, Paul

Thanks Barry. Please answer the questions we posed below (and have posted multiple times since March 30, including in our letter to the Court (Dkt. 814)), namely, advise us whether you intend to elicit (1) Mr. Critchley's own views or (2) the alleged views of Robert Menendez (rather that what Robert Menendez said, if non-hearsay and relevant). HI DAN, APOLOGIES, I'M NOT UNDERSTANDING YOUR QUESTION. I'VE PROFFERED A REDACTED TRANSCRIPT THAT WAS APPROVED IN TRIAL 1. WE PROPOSE TO USE THE SAME QUESTIONS AND ANSWERS. THUS NOT UNDERSANDING WHY MY CHARACTERIZATION OF THIS TESTIMONY HAS ANY SIGNIFICANCE. FOR WHATEVER IT'S WORTH, I THINK THE TESTIMONY MAY RELATE TO BOTH ISSUES POSITED IN YOUR EMAIL.

---------------

Barry,

We appreciate the below email, but it does not answer the pertinent questions and comments we have asked multiple times since March 30, including in our letter this past week to the Court (Dkt. 814), and in our email chain through yesterday, a copy of which is attached. It may be that, as to certain issues, the parties have a disagreement, and litigation will be necessary, but without answers to our questions/comments, we cannot determine fully your intentions, which is contrary to what we understand the Court to have ordered, and risks disruption to the trial. Accordingly, please provide at least the following. And as always, we are happy to confer if more efficient, and we hope that we can narrow, moot, or tee up issues timely for the Court.

1. Jamela Maali

   a. As to her "experience working with Fred Daibes," please provide more specifics on both substance and time frame. As you know, Mr. Daibes had a number of business interests, over a lengthy time period, much of which is irrelevant. PLEASE SEE OUR UPDATED PROFFER FOR MS. MAALI.

   b. As to Mr. Daibes's alleged reputation for gift giving, as we have previously stated, including in our letter this past week (Dkt. 814), absent a good faith proffer of how, if at all, the defendant intends to

    link such alleged reputation to the defendant's knowledge, we do not believe such reputation to be admissible—and we are unaware of any admissible testimony that Ms. Maali could give providing such a linkage.  *See, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 121-22 (2d Cir. 2007) (holding district court erred in admitting evidence of one person's knowledge to show defendant's knowledge without evidence that defendant was aware of the same information, expressing doubt that evidence was relevant, and explaining that, in any event, it should have been precluded under Rule 403 because it "required [the jury] to draw a series of inferences, unsupported by other evidence," yet was offered on "the ultimate issue in the case"); *United States v. Martoma*, 993 F. Supp. 2d 452, 455-56 (S.D.N.Y. 2014) (in insider trading case, excluding expert opinion that a stock was overvalued absent evidence that the defendant had himself conducted such analyses or been contemporaneously reading such analyses).  WE THINK WE'LL BE ABLE TO LINK THIS TO THE DEFENDANT'S KNOWLEDGE.

  c. With respect to multiple statements in the proffer, it appears that a basis, if not the sole basis, for such statements would be things the defendant said.  However, she cannot elicit her own statements for the truth of any matter asserted.  Please confirm that you do not intend to elicit any such statements or ask questions that the witness could answer only based on such statements.  THE REVISED, SUPPLEMENTED PROFFER CONTAINS SUBSTANTIAL MATERIAL IN ADDITION TO THIS.

2. Carolina Silvarredonda

  a. This potential witness's testimony raises very significant hearsay concerns (as was litigated during the first trial (*see* Dkt. 485 at 5) resulting in then defense counsel substantially narrowing the direct examination).  She cannot, for example, opine as to what "work actually [was] performed" by the defendant based on what Wael Hana or the defendant told her.  Nor can she opine as to the alleged "satisfaction with the work" by Mr. Hana based on what he or anyone else said.  All of that is inadmissible hearsay, and based on her testimony at the first trial and the documentary record, we are not aware of any other basis on which this witness could so opine.  In short, it appears that much of the proffer is inadmissible.  Please accordingly provide specifics as to the source(s) of what you intend to elicit.   WE ALSO ARE FULLY PREPARED TO NARROW THE SCOPE OF HER DIRECT TESTIMONY IF NECESSARY, SHOULD THE COURT'S PERSPECTIVE IN THIS CONTEXT BE THE SAME AS IN TRIAL ONE. I BELIEVE OUR PROFFER EXTENDS WELL BEYOND INADMISSIBLE HEARSAY.

3. John Moldovan

  a. As an initial matter, we are not aware of any basis to presume that Mr. Moldovan would testify if re-called that the supposed "loan" had, contrary to the written promissory note, a five-year term.  There is nothing in his 3500 material mentioning a five-year term or that the terms he was told by Mr. Hana were not what was included in both the draft and final written promissory notes (*i.e.*, a two-year term), and his testimony in the first trial about five years was made *without looking at the actual alleged contract*, was prefaced with "I think," and was describing the terms of the contract he drafted, which in fact showed two years (Q: "Generally, what were the terms of that promissory note [that you drew up]?"  A.  . . . "I think it was like a five-year term that she had on which to pay that amount back in full.").  We are happy to confer with you on this, but we are very confident that he would not testify there was a five-year term.    OF COURSE NONE OF US KNOWS AT THIS MOMENT PRECISELY WHAT HE WOULD SAY, BUT WE BELIEVE WE HAVE A GOOD FAITH BASIS RE HIS

TESTIMONY ABOUT A FIVE-YEAR TERM.

b. In any event, this subject matter—the terms of the supposed "loan"—was fully explored on direct and cross-examination, so appears, at a minimum, cumulative. Please provide authority for the proposition that a party may re-call a witness to explore further the exact same subject (rather than a new subject, if relevant and admissible). I BELIEVE JUDGE STEIN ALREADY HAS RULED ON THIS.

c. The alleged "investments" that he received from Mr. Hana and Mr. Daibes are irrelevant, and also already precluded by the Court's repeated rulings that gifts or the provision of things of value to persons other than the defendant or her husband are not admissible. (*See* Jan. 16, 2025 Tr. at pp. 5-6.) Indeed, when this issue arose with respect to Ms. Meirna Hanna, the Court repeated the same ruling. (*See* Tr. 1081 ("I am going to allow gift giving to Mrs. Menendez, yes. But not other people.").) Please provide your position as to how such evidence is relevant and admissible, both generally and in light of these rulings. WE'LL RETHINK THIS BASED ON YOUR NOTE ABOVE.

Finally, we believe that you still owe us updated proffers for a number of other defense witnesses, and answers to several questions/comments, including as to who is on your current list.

Dan

Daniel C. Richenthal

Deputy Chief, Criminal Division

Assistant United States Attorney

United States Attorney's Office

Southern District of New York

26 Federal Plaza, 37th Floor

New York, NY 10278

Tel: (212) 637-2109

Fax: (212) 637-2615

Daniel.Richenthal@usdoj.gov


--------------

Do you have any update as to whether you intend to call these two witnesses (Garbis Tabourian and Robert Menendez), and as to whether any others are no longer on your list? You had previously indicated that you were reconsidering or may not call multiple others also, including Ana Peguero, Mohammed Badeer, and a person you referred to as "Happy," and your most recent letter also appeared to suggest that you were not going to call Fred Daibes.

------------

Thanks Barry. That said, as we previously stated, just because something was admissible in the first trial with respect to Robert Menendez does not necessarily mean that it's admissible now, when Mr. Menendez is not a defendant, and in particular, as we have also previously stated, including in our letter to the Court this past week (s*ee* Dkt. 814 at 5), (a) there is no relevance to Mr. Critchley's *own* views, and (b) Mr. Critchley cannot opine on what others were *thinking* (rather than what they said, if non-hearsay and relevant).

Accordingly, please (1) send us a complete updated proffer for Mr. Critchley and (2) advise us whether you intend to elicit his own views or the alleged views of Robert Menendez (rather that what he said, if non-hearsay and relevant). UPDATED PROFFER SENT.

--------------

Barry,

As we noted earlier, we continue to review your various emails about defense witnesses. That said, given that the information has come in piecemeal, over time, and and not all in one or two email chains, we are not easily able to determine the latest proffers/what is outstanding, which risks the parties not being on the same page. Could you please therefore send, in a single email or Word document or PDF document, your complete witness list, and all of the latest proffers, in their present form?

Regardless, below is a preliminary list of certain of what we understand to be outstanding, or for which we have questions, by witness, based on your below email and other emails. This is not meant to be exhaustive, but rather to prioritize presently certain issues in the interest of narrowing, mooting, or teeing up for the Court any relevant disputes. And, as always, we are happy to chat live.

1. "MOHAMMED BADEER AND [an individual] APPARENTLY NAMED 'HAPPY'[.]'"

    a. We interpret your below email to indicate that they may no longer be on your witness list. Please confirm that is correct. And if it not correct, please provide proffers, as directed by the Court.

 AS OF RIGHT NOW WE DO NOT HAVE A PROFFER AS TO HIM.

2. Katia Tabourian

    a. You say below that you are not presently anticipating to elicit alleged character traits, other than honesty and truthfulness, but are "considering" doing so. Are we correct that you will advise us of your position, and proffer additional information as warranted, by the end of the weekend? And to the extent that is your answer as to this or other matters that you are thinking about, could you

    please provide such a position and proffer by 5 pm on Sunday, rather than late at night, so that we can file a motion and/or be ready to advise the Court of any issues by Monday morning? AS OF RIGHT NOW, ONLY HONESTY AND TRUTHFULNESS.

   b. You say below that you are "reconsidering" whether to seek to offer evidence of the defendant's "attitude." Again, are we correct that you will advise us of your position, and proffer additional information as warranted, by the end of the weekend? THAT IS OUR INTENTION.

   c. You say below that she will testify to the defendant's alleged character and reputation. Please confirm that this testimony will in the form of opinion or reputation only, not specific instances of alleged conduct. *See* Fed. Rule Evid. 405(a). CONFIRMED.

3. Garbis Tabourian

   a. Same questions/comments. WE HAVE NO PROFFER AS TO HIM AT THIS TIME.

4. John Moldovan

   a. You said below, at approximately 6 am, that we would receive an updated proffer "shortly." We have received one at the time of this email (approximately 3 pm). By when can we expect one? WE HAVE PROVIDED ONE.

5. Nicholas Lewin

   a. Have you served him, and/or his firm, with a subpoena, and if so, could you send us a copy? WE'RE HAPPY TO SEND IT TO YOU, BUT PLEASE ADVISE AS TO THE BASIS FOR THIS REQUEST. I DON'T BELIEVE WE HAVE BEEN COPIED ON ANY OF THE GOVERNMENT'S SUBPOENAS.

   b. As you know, separately, we responded to your request for us to speak about our view of Mr. Lewin's potential testimony, and we are happy to do so at your convenience, and think that, given the nature of the issue, if you wish to speak, it would be best to do so sooner rather than later.

6. Ana Peguero

   a. You said below, at approximately 6 am, that you would circle back "shortly." We have received further information as the time of this email (approximately 3 pm). By when can we expect such information? WE HAVE NO PROFFER AS TO HER AT THIS TIME.

7. Meirna Hanna

    a. We still have the same questions/concerns that we have had for several days, and for which we have not received answers. For efficiently, we reproduce certain of these below. You said below, at approximately 6 am, that you "may" provide more information "shortly," but as of the time of this email (approximately 3 pm), we have not received any such information, nor does it appear that you have agreed to answer all of our inquiries. Absent such information, we will have no choice but to file another motion with the Court.

        i. With respect to "her experience working at IS EG Halal and interactions with Wael Hana," she already testified on these subjects, and you declined to cross-examine her. In any event, please advise what "experience" and "interactions" you believe are relevant, admissible, and non-cumulative.

        ii. With respect to "interactions" with the defendant, as we discussed in person before she left the witness stand, and memorized over email, such interactions were, according to her counsel and the documentary record, extraordinarily limited, and in person, they exchanged no more than mere pleasantries. Please therefore let us know what you intend to elicit in this respect.

        iii. With respect to "Wael's [alleged] reputation for gift giving in the business community," this issue was discussed with the Court prior to Ms. Hanna taking the stand, and the Court reserved decision, thereby letting you seek to explore the area on cross-examination, if you chose to do so. (Tr. 1134-35.) However, you chose not to do so. (Tr. 1156.) We continue to think that this line of inquiry is inadmissible unless you can proffer a good-faith admissible basis to link the alleged reputation to the defendant, which we do not understand Ms. Hanna to be competent to do. Please provide such a proffer. WE HAVE PROVIDED A MORE DETAILED PROFFER FOR HER AND THE NEXT TWO WITNESSES THAT WE BELIEVE RESPONDS TO THESE QUESTIONS.

8. Carolina Silvarredonda

    a. Please let us know by when we can expect the expanded proffer/answers to our questions.

9. Jamela Maali

    a. Please let us know by when we can expect the expanded proffer/answers to our questions, certain of which are similar to those with respect to Ms. Hanna.

As always, as previously noted, and noted above, we are happy to confer if that would assist in narrowing or mooting any issues, or would be more efficient than trading emails.

Dan

------------

Barry Coburn
Coburn, Greenbaum & Eisenstein PLLC

1710 Rhode Island Avenue, NW
Second Floor
Washington, DC  20036
Universal direct dial (work and cell):  202-643-9472
Firm main number:  202-630-2844
Fax:  866-561-9712 (toll-free)
www.coburngreenbaum.com