

Barry Coburn
Admitted DC, MD, VA, NY
Direct Dial: (202) 643-9472

April 14, 2025

<u>VIA ECF</u>

The Honorable Sidney H. Stein
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re: <u>United States v. Nadine Menendez, (S4) 23-cr-490 (SHS)</u>

Dear Judge Stein:

  I am writing to Your Honor to provide a further response to the government's letter motion, filed at 11:12pm Saturday night, April 12, 2025, concerning aspects of the defense case.

<u>Exhibits Offered in Connection with Katia Tabourian's Testimony</u>

  Our view is that Defense Exhibits 161 and 162 are relevant and admissible. Each book contains notations of gifts received by Nadine Menendez for her wedding and the birth of her son, respectively. Ms. Menendez's wedding book, Exhibit 161, was created by Ms. Menendez in 1989. The book contains a handful of pages that list the friend or family member's name, and the gift provided by that individual. Exhibit 162, a scrapbook of cards received for the birth of Ms. Menendez's son, was created in late 1997. In Exhibit 162, Ms. Menendez wrote on the cards given for the birth of her son the gift received with the card. Those notations were made contemporaneously with Ms. Menendez's receipt of such gifts. Ms. Tabourian would be able to testify that she knew Ms. Menendez did so. Gifts listed in each exhibit include gold coins and other gold items.

  Evidence that Ms. Menendez received gold coins from her family is, we respectfully submit, directly relevant to this matter. The government presented testimony through their witness, jeweler Vasken Khorozian, that Ms. Menendez sold gold coins through him. He further testified that the gold Ms. Menendez sold came from her family. The government has indicated that Ms. Menendez's statement about selling her family's gold was a lie. These family books,

which were created at the time of these family events, provide probative value. That is, Ms. Menendez was selling family gold, not bribes from Mr. Daibes or Mr. Hana.

Additionally, Ms. Tabourian would be able to authenticate such books. She was aware of them at their creation and can testify about the creation of such books as a common practice for her sister and her family. Moreover, such books fall into the exceptions set forth in F.R.E. 803(13) (Family Records), 803(15) (Statements in Documents That Affect an Interest in Property), and 803(16) (Statements in Ancient Documents).

Testimony of Meirna Hanna

As the government notes, we provided the following updated proffer for Ms. Hanna:

> "Meirna Hanna would testify that Wael Hana has an established reputation for gift-giving, including the giving of expensive gifts such as gold and cash, within his extended business community. This community includes business associates, people with whom he contracts, employees of ISEG Halal, persons he has met during the course of his business activities, and others. She would further testify that Nadine, as a consultant for ISEG Halal, was part of what Ms. Hanna would describe as Mr. Hana's business community."

At present, that is the only testimony we expect from Ms. Hanna. We acknowledge that Federal Rules of Evidence 404(a)(1) prohibits the use of character evidence to prove that on a particular occasion the person acted in accordance with the character or trait. However, a crucial element of this case is Ms. Menendez's intent and understanding of the purpose of the items she received from Mr. Hana. Evidence of Mr. Hana's reputation for gift giving in the community is not being offered to prove that he acted in accordance with a character or trait. Instead, it is offered for the effect of such reputation on Ms. Menendez. The testimony does not relate to whether Mr. Hana's providing items of value to Ms. Menendez was in accordance with his character, and instead relate to Ms. Menendez's understanding of why she received such items.

Contrary to the Government's argument, there is a connection between Mr. Hana's reputation and the knowledge of Ms. Menendez. As we have proffered, Ms. Hanna would testify that Mr. Hana's reputation is among his business community. Ms. Hanna would testify that his business community would include consultants of IS EG Halal. Ms. Menendez was a consultant of IS EG Halal. The government argues, but does not offer any cases to support its argument, that Ms. Hanna has to testify that Ms. Menendez was a member of the business community in

order to render admissible her testimony of Mr. Hana's reputation amongst the business community.

Testimony of Jamela Maali

At present, the testimony we seek to elicit from Ms. Maali is similar in nature to Ms. Hanna's testimony as it relates to Mr. Daibes' reputation. Mr. Moldovan testified that Mr. Daibes and Mr. Hana were friends and business associates. Mr. Moldovan and Ms. Maali both testified that Ms. Maali worked for IS EG Halal and Mr. Daibes. Additionally, the government presented testimony that their offices were in the same building and they had overlapping business interests. Thus, their business communities are substantially linked. Ms. Maali would testify that Mr. Daibes has a reputation for gift-giving in his business community. Ms. Menendez fits into that community as a consultant for IS EG Halal. Moreover, Ms. Maali provides an additional link in this regard, which we do not believe is necessary. The government elicited testimony and presented exhibits showing that Ms. Maali was copied on emails regarding Ms. Menendez as a consultant for IS EG Halal. *See* GX 3C-9.

Respectfully submitted,

Barry Coburn