

**Prison Medical Consulting**

Charles Howard, MD, MMM
Prison Medical Consultant
MedAvise Consultants, LLC
3585 NE 207th St Ste C9  #801235
Miami, FL 33280  Tel: 786-539-3340
MedAviseConsultants.com  Charleshowardmd.com

August 12, 2025

**RE: Independent Medical Review: Nadine Menendez  DOB:**  **58yo Female**

## SUBJECT MATTER EXPERT BACKGROUND

I, Charles Howard, MD, MMM, a retired Physician from the Federal Bureau of Prisons (BOP) have served twenty (20) years as a Medical Officer.  During these Twenty (20) years, I served as the National Ophthalmology consultant to the Federal Bureau of Prisons.  From November 2002 to December 2016, I worked at the Federal Medical Center, Devens, (FMC Devens) in Ayer, Massachusetts.  My duties also included those of a General Staff Physician.  From December 2016 until December 2022, I served as Medical Director at the Federal Detention Center, Miami (FDC Miami).  I was responsible for examining, evaluating, treating, and coordinating all Medical Care for all inmates in the facility.  There are approximately 20,000-30,000 inmates seen at this institution annually.  I am Board Certified in Quality Assurance and Utilization Review, a Fellow of the American Institute of Health Care Quality Management, and a Diplomat and Senior Analyst of the American Board of Disability Analysts.  In 2005, I earned a Master's Degree in Medical Management (MMM) from HJ Heinz School of Public Policy and Management at Carnegie Mellon University, Pittsburgh, PA.

FMC Devens is an administrative facility that houses convicted male Federal Offenders who require all levels of specialized or long term medical and/or mental health care. It is one of six Federal Medical Centers Nationwide operated by the BOP. FMC Devens is one of only two BOP facilities that offer in-house hemodialysis and the only renal transplant supporting BOP facility in the nation. FDC Miami is also an administrative facility. FDC Miami houses Detainees who are Pre-Trial, Pre-Sentenced, and Sentenced inmates. As Administrative Facilities, both house individuals of minimal to maximum security levels.  Both facilities also house low and medium security level inmates who do not require specialized medical or mental health care.  Under my tutelage, both institutions repeatedly attained full accreditation by several Accrediting Agencies.  These include the American Correctional Association, Joint Commission on Accreditation of Healthcare Organizations (JCAHO), Accreditation Association of Ambulatory Healthcare (AAAHC) and BOP Program Review Accreditation.

I have testified in several Federal Courts as an expert witness in Correctional Health Care.  Cases have been for Defendants as well as for the Prosecuting US Government on separate occasions.

## SCOPE OF REPORT

I have been retained as a Subject Matter Expert in Correctional Medicine to conduct a review of Mrs. Menendez's complex medical conditions.   To render my Subject Matter Expert opinion, I performed a review of  Mrs. Menendez's Medical Records. Included were 135 pages of Medical records, laboratory reports, imaging such as CT scans, Ultrasounds, Mammograms and private Physician notes and operative reports.

## MEDICAL HISTORY



On May 19, 2025 Mrs. Menendez was examined by a surgical breast reconstructive surgeon in New York. The recommendation was

Mrs. Menendez went for a second opinion to another breast reconstructive surgeon in New York.

## PRISON LIFE ENVIRONMENT

Inmates live in a densely populated environment, where spread of infectious disease has always been a concern, even prior to COVID-19. Infections are sometimes the result of inmates sharing items such as soap, towels, or clothing, because they are not always readily available. Much of the infection control responsibility falls to inmate's diligence about cleansing and disinfecting areas. As might be expected, inmates frequently fall short on cleansing and disinfecting, creating additional risk. Patients like Mrs. Menendez, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ have difficulty managing movement to and from activities of daily living such as Commissary, Food Service and Medical areas. These individuals frequently rely on other inmates to help with care. This help is not dependable and not consistent if present at all.

Inmates in less healthy conditions are much less likely to be diligent about cleanliness and disinfection. The "high touch" areas where contagion of disease is a concern are toilets, showers, telephones and computer terminals shared by multiple inmates each day. During my career, I witnessed many infectious outbreaks including Methicillin Resistant Staph Aureus (MRSA). For healthy inmates, the risks are not as troubling as for immunocompromised, physically compromised or the elderly, for whom any infection could be life-threatening.

## SUMMARY

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

She was seen by additional surgeons on May 3, 19, and 30 regarding additional procedures. The specialists were breast reconstructive surgeons. The recommendation was to undergo additional procedures ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ They were very clear in explaining the need for AT LEAST six months to a year of frequent follow-up visits and additional surgical procedures.

Community Standard of Care follow-up for breast surgery is VERY complex and time consuming. The protocol as required by The American Society of Clinical Oncology and the American Cancer Society includes the following regimen:[1]
1. First 3 years: detailed history and physical every three to six months by Oncology.
2. Next 2 years: detailed history and physical every six to twelve months by Oncology.
3. After five years: detailed history and physical every year.
4. Specialized laboratory testing and/or imaging (CT, MRI, PET/CT) as needed if symptoms or findings on exam must be completed timely and treatment instituted quickly if needed to avoid metastatic spread and early mortality.

The rationale for this intensity is the ability to detect recurrence or second primary malignancies early instead of late with lethal consequences. Late effects, or complications of surgery can be addressed quickly, and continue to provide survivorship care. Specifically, being monitored are lymphedema (swelling), chronic pain, cardiac toxicity, worsening osteoporosis (bone thinning/brittleness), and cognitive impairment. In addition, physical activity, and weight management is encouraged aiding in improved quality of life with reducing recurrence risk.

In addition to her complicated reconstructive surgery needs, Mrs. Menendez is just over one year post operative for breast cancer. The protocol REQUIRES an Oncology visit every three to six months for the next two years. She also REQUIRES the needed specialized testing, blood work, and imaging scans timely.

Due to the complex, cumbersome policies and protocols in place at the BOP, in addition to staffing and scheduling issues, it is HIGHLY UNLIKELY that she will receive the testing and consultations required.

The Social Security Administration has crafted Actuarial Tables to predict the average Life Expectancy at a given age for any United States citizen of average health. The Tables set forth the expected remaining number of years prior to death; the "Life Expectancy". Pursuant to the latest published Social Security Actuarial Tables, Mrs. Menendez, who is 58 years of age, if he were of average health, would have a reasonable Life Expectancy of 25.27 years. However, given Ms. Menendez's medical issues place her at much less than "average health" if she were any age. Due to these issues, it is likely that Mrs. Menendez's Life Expectancy is significantly less than "average". In addition, several studies have documented that for each year of incarceration, the average life expectancy decreases by two years.[2, 3, 4]

While at Federal Medical Center Devens, and at the Federal Detention Center Miami, over my 20 years BOP experience, I have many times observed the downward spiral that accompanies incarceration in both an inmate's physical and mental health. The deterioration is often severe and overwhelming. As medical, psychological and physical conditions worsen, the course of deterioration leaves inmates ever less hopeful of functioning independently for the duration of their incarceration. Mrs. Menendez thankfully still functions independently. However, this may not last indefinitely, especially if she develops additional cancers, or metastases of her breast cancer. Many inmates give up entirely. Recurrent and increasingly severe medical problems and hospitalizations, many times for very lengthy periods of time become the "norm" in older, sickly or emotionally depressed patients, inmates, or not. Inmates, however, become unable to receive visitors without special permission of the institution's Warden. Hospitalized Inmates are unable to partake of the few positive opportunities available at prison facilities such as exercise, education classes or even the company of others. They become extremely aware that the conditions have no real chance of improving. All these issues combined lead many inmates to sink into severe depression. This depression, in turn, negatively affects the inmates' health, and so a downward spiral is created.

The Fiscal Government cost for each inmate requiring medical services while incarcerated is greater than $104,000 annually. Several studies, including from the BOP itself, have documented that typically aging inmates engage in fewer misconduct incidents while incarcerated than younger inmates.

Older inmates, especially those over 60-70 years old, have a low rate of recidivism as documented in several studies including by the BOP. It has been documented at less than 5%.[5] White-Collar Crime inmates also have a low recidivism rate, based upon my 20 years of personal observation. I have yet to locate recidivism studies focused specifically on White-Collar Crime offenders or elderly White-Collar Crime offenders.

## CONCLUSIONS

**It is evident from the Medical Records that the level of Medical Care and timeliness of obtaining laboratory testing, imaging and sub-specialty consultations with Oncology and Breast Reconstructive surgeons required by Mrs. Menendez are impossible to obtain while incarcerated.**

**Mrs. Menendez's post breast cancer ▮▮▮▮ treatment and cancer follow-up care absolutely requires a specific schedule as delineated above. Expecting or anticipating this to occur while incarcerated is simply unrealistic.**

**The former BOP Director, Collete Peters, has testified before Congress several times that Medical Care staffing and BOP facilities in general are woefully understaffed resulting in rampant inability to provide proper and timely medical care within the BOP system.  Congress has appointed OIG oversight of the Federal Bureau of Prisons because of precisely these kinds of issues.**[6, 7, 8, 9]

**Complicating Mrs. Menendez's Medical and Mental Health care issues are the following:**
1. **There are limited female facilities within the BOP**
2. **Only ONE female Medical Center facility exists within the BOP at Carswell, Texas which is NOT a Cancer referral center.  The Only Cancer referral Medical Center in the BOP is at FMC Butner, an all-male institution.**
3. **BOP does not deliver regular preventive healthcare to inmates due to universal paucity of Health Care staff.  This has been confirmed by testimony before Congress at least three times, as noted above.**
4. **Like Military Veteran inmates with ▇▇▇, there is NO facility, nor program in the BOP that provides Mental Health Support for patients with ▇▇▇.**
5. **The need for sub-specialty consultations for Oncology will require outside hospital trip arrangements.  These visits cannot be reliably obtained within the BOP again, because of the excessively cumbersome policies and procedures.  The BOP has the intent, however, the execution of the processes to get a patient out for services, just does not reliably occur.**
6. **Obtaining imaging studies, IF an imaging truck is brought in, are also not reliably and timely available because of staffing, and scheduling, and the policies and procedures that are simply abominations without any efficiency.**

**In my professional opinion, as a licensed physician for 48 years, 23 of which are in correctional medicine, the BOP and Mrs. Menendez are best served by a sentence of Home Confinement with supervision rather than a term of incarceration. This would allow her proper continuity of medical care, specifically the post cancer excision care as dictated by both the American Society of Clinical Oncology and the American Cancer Society.  She would also be able to complete the needed reconstructive surgery thus preventing serious scarring, and tightening of tissue, resulting in severe pain and worsening decrease in function of her right arm.**

Thank you for your consideration.
Charles D. Howard, MD, MMM
*Digitally signed by Charles D. Howard, MD, MMM*
*Date: 2025.08.13 21:34:18 -04'00'*

Charles Howard, MD, MMM
Former Medical Director, Miami Federal Detention Center
Prison Medical Consultant
Master of Medical Management
Fellow American Board of Quality Assurance  & Utilization Review Physicians
Fellow American Institute of Health Care Quality Management
Diplomat and Senior Analyst American Board of Disability Analysts
https://MedAviseConsultants.com      https://Charleshowardmd.com
drhoward@medaviseconsultants.com   doc@charleshowardmd.com

Please see references on following page

References:
1. American Cancer Society/American Society of Clinical Oncology Breast Cancer Survivorship Care Guideline. Runowicz CD, Leach CR, Henry NL, et al. Journal of Clinical Oncology : Official Journal of the American Society of Clinical Oncology. 2016;34(6):611-35. doi:10.1200/JCO.2015.64.3809.
2. https://www.prisonpolicy.org/blog/2017/06/26/life_expectancy/
3. Annu Rev Sociol. 2015 Aug; 41: 291–310.
4. Demography. 2020 Apr; 57(2): 577–598.
5. file:///C:/Users/eyemd/Downloads/20171207_Recidivism-Age.pdf
6. https://www.congress.gov/event/118th-congress/house-event/117533
7. file:///C:/Users/eyemd/Downloads/20240723-peters-oral-stmt-sjc-hearing-1.pdf
8. https://www.bop.gov/resources/news/20230913_director_peters_testifies.jsp
9. https://judiciary.house.gov/committee-activity/hearings/oversight-federal-bureau-prisons-3