**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    -against-

NADINE MENENDEZ et al.,

        Defendants.

Case No. S4 23-cr-490 (SHS)

## DEFENDANT NADINE MENENDEZ'S MOTION FOR BAIL PENDING APPEAL

**COZEN O'CONNOR**

Sarah R. Krissoff
Emma Scully
Andrew Vazquez
3 WTC
175 Greenwich St.
New York, N.Y. 10007
(212) 908-1388

*Attorneys for Defendant Nadine Menendez*

**TABLE  OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT ................................................................................................................. 3

I.  MRS.  MENENDEZ  IS  NEITHER  A  FLIGHT  RISK  NOR  A  DANGER  TO  THE COMMUNITY, NOR IS THIS APPEAL A DILATORY TACTIC ...................................... 4

II.  MRS.  MENENDEZ  RAISES  SUBSTANTIAL  QUESTIONS  THAT  ARE  LIKELY  TO RESULT IN A NEW TRIAL ......................................................................................... 6

    A.  Mrs. Menendez's Sixth Amendment Claim Raises a Substantial Question ................ 6

    B.  A Decision in Mrs. Menendez's Favor Would Likely Necessitate a New Trial .........11

    C.  Additional Substantial Questions Will Be Raised on Appeal.................................... 12

CONCLUSION............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Fulminante*,
499 U.S. 279 (1991).................................................................................10, 11

*Bentley v. Scully*,
41 F.3d 818 (2d Cir. 1994)..............................................................................11

*Faretta v. California*,
422 U.S. 806 (1975)........................................................................................10

*Luis v. United States*,
578 U.S. 5 (2016).............................................................................................6

*McDonnell v. United States*,
579 U.S. 550 (2016).......................................................................................12

*U.S. v. Blaszczak*,
No. 17-CR-00357-LAK (S.D.N.Y.).................................................................9

*United States v. Cain*,
671 F.3d 271 (2d Cir. 2012).............................................................................9

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006)........................................................................................10

*United States v. Hall*,
765 F. Supp. 1494 (S.D. Fla. 1991) .................................................................8

*United States v. Hart*,
906 F. Supp. 102 (N.D.N.Y. 1995)...................................................................5

*United States v. Jones*,
900 F.2d 512 (2d Cir. 1990)..............................................................................9

*United States v. Kaufman*,
No. 19-CR-0504, 2021 WL 8055691 (S.D.N.Y. Oct. 27, 2021) ......................6

*United States v. Kliti*,
156 F.3d 150 (2d Cir. 1998)..............................................................................9

*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984)................................................................................7

*United States v. Pouryan*,
   628 F. App'x 18 (2d Cir. 2015) ............................................................................10

*United States v. Price*,
   611 F. Supp. 502 (S.D. Fla. 1985) ...........................................................................8

*United States v. Randell*,
   761 F.2d 122 (2d Cir. 1985)......................................................................4, 5, 6, 8

*United States v. Santiago*,
   695 F. Supp. 1490 (S.D.N.Y. 1988)..........................................................................5

*United States v. Scheur*,
   626 F. Supp. 2d 611 (E.D. La. 2009)........................................................................8

*United States v. Scott*,
   No. 17-CR-630-ER, 2024 WL 1676633 (S.D.N.Y. Apr. 18, 2024) ..........................6

*United States v. Silver*,
   203 F. Supp. 3d 370, 376 (S.D.N.Y. 2016)...........................................................4, 6

*United States v. Stein,*
   541 F.3d 130 (2d Cir. 2008)......................................................................................6

On behalf of Nadine Menendez, we respectfully request that the Court order the continued release of Mrs. Menendez on bail pending appeal, pursuant to 18 U.S.C. § 3143, and impose the same bail conditions set at the time of her arrest on September 22, 2023. The Government has informed us that it opposes this request.

## INTRODUCTION

Mrs. Menendez's appeal raises a paradigmatic "substantial question" that warrants her release on bail. In the course of her years-long prosecution, the Government employed an aggressive charging strategy that resulted in a fundamental constitutional error—the deprivation of her right to chosen counsel rooted in the Sixth Amendment. This error infected the entire trial from start to finish, as well as several months' worth of pretrial proceedings. The right to chosen counsel is a fundamental component of our justice system, and as such any wrongful interference is deemed a structural error that undermines the fairness of the entire trial. Accordingly, a decision in Mrs. Menendez's favor on appeal would almost certainly require a new trial. Given the novelty and importance of the Sixth Amendment question, and the likelihood that it will result in a new trial, this case presents precisely the kind of circumstances that necessitate release.

As set forth more fully in Mrs. Menendez's brief before the Second Circuit, the events leading up to Mrs. Menendez's trial culminated in the forced withdrawal of Mrs. Menendez's longtime chosen counsel, David Schertler and his firm Schertler Onorato. In August 2023, Mr. Schertler and his colleagues participated in a standard attorney proffer with the Government (the "August 2023 Proffer"). Shortly thereafter, in September 2023, Mrs. Menendez was indicted. In March 2024, approximately two months before the then-scheduled trial, the Government obtained a fourth superseding indictment, which included new obstruction charges against Mrs. Menendez that were based, in part, on statements made by Mr. Schertler during the August 2023 Proffer.

1

The situation was exacerbated by the Government's failure to staff the August 2023 Proffer with anyone other than Government attorneys. As a result, Mr. Schertler became a potential fact witness, creating a conflict between Mrs. Menendez and her counsel. When the Court held a *Curcio* hearing to address the potential conflict, the Government unequivocally represented that it intended to call Mr. Schertler at trial—making him a sworn witness and rendering the conflict unwaivable. When the parties were unable to reach a stipulation, Mrs. Menendez was left with no choice but to agree to Mr. Schertler's withdrawal.

Ultimately, despite forcing Mr. Schertler off of the case, subpoenaing Mr. Schertler himself for trial testimony, and marking trial exhibits for admission that necessarily required Mr. Schertler's testimony, the Government, shockingly, *never called Mr. Schertler at trial*. Indeed, the Government offered no evidence *whatsoever* regarding the August 2023 Proffer. In violation of its duty of candor, the Government never informed Mrs. Menendez or the Court directly of its change of heart, Mrs. Menendez was not allocuted further on the issue (as she easily could have and should have been), and Mrs. Menendez was forced to proceed to trial without her highly experienced and well regarded chosen counsel.

The Government's reckless course of action raises a substantial question of constitutional dimension that mandates Mrs. Menendez's release under 18 U.S.C. § 3143. This issue alone is enough for the Court to find a question warranting release, but Mrs. Menendez's appeal raises several additional substantial, material questions that require vacatur or reversal. In tandem with Mrs. Menendez's demonstrated good behavior on release to date, the issues on appeal justify release pending their resolution.

2

**BACKGROUND**

On September 11, 2025, the Court sentenced Mrs. Menendez to 54 months imprisonment, and ordered that she surrender to the custody of the U.S. Bureau of Prisons on July 10, 2026. *See* ECF. No. 903 (the "Judgment").

On September 23, 2025, Mrs. Menendez filed a Notice of Appeal with respect to the Judgment. On January 20, 2026, she filed her opening brief in the Second Circuit. *See* Case No. 25-2322, Dkt. Entry 23.1 ("Brief," attached hereto as Exhibit A). On appeal, Mrs. Menendez requests, *inter alia*, that the Second Circuit vacate or reverse all counts of conviction based on the deprivation of her Sixth Amendment right to chosen counsel, the erroneous admission of summary chart evidence, the insufficiency of the evidence on all counts, and lack of venue. *See id.* Under the current schedule, the Government will file its brief in opposition by April 21, 2026, and Mrs. Menendez's reply will be filed by May 12, 2026. *See* Case No. 25-2322, Dkt. Entry 47.

Because Mrs. Menendez's appeal raises substantial questions that, if resolved in her favor, will require vacatur and a new trial, and because she is demonstrably neither a flight risk nor a risk to the safety of others, Mrs. Menendez respectfully requests that this Court order her continued release on bail pending appeal under 18 U.S.C. § 3143. Mrs. Menendez also moves to stay the Court's fine and forfeiture order pending appeal pursuant to Federal Rules of Criminal Procedure 38(c) and 32.2(d) to maintain the status quo pending the outcome of Mrs. Menendez's appeal.

**ARGUMENT**

The Bail Reform Act of 1984 provides that a court "shall order" bail pending appeal if it finds (i) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"; and (ii) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or]

3

. . . an order for a new trial." 18 U.S.C. § 3143(b)(1). The Second Circuit has interpreted the act to require a finding of four conditions: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). If a defendant satisfies the elements of 18 U.S.C. § 3143(b) by clear and convincing evidence, "bail pending appeal is mandatory." *United States v. Silver*, 203 F. Supp. 3d 370, 376 (S.D.N.Y. 2016) (granting bail pending appeal where defendant was not a flight risk or a danger to community, appeal was not dilatory, and appeal raised substantial question premised on erroneous jury instruction). Mrs. Menendez easily meets this standard.

## I. MRS. MENENDEZ IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY, NOR IS THIS APPEAL A DILATORY TACTIC

Mrs. Menendez satisfies § 3143(b)'s first prong, because she is neither a flight risk nor a danger to the community. Notably, Mrs. Menendez, aged 58, has been successfully released on bail for many years. First released on September 27, 2023, Mrs. Menendez has proved, over and over again, that she is neither a flight risk nor a danger to the community. Highlighting this, in imposing sentence, this Court agreed with counsel that there was no need for specific deterrence, noting that Mrs. Menendez "is not going to be committing" the crimes for which she was sentenced again. *See* Sent'g Tr. dated Sept. 11, 2025, Dkt. Entry 915, at 34:22–25. Mrs. Menendez's continued excellent behavior post-sentencing, and her consistent attendance at all court appearances for the past several years, confirms this determination.

4

Mrs. Menendez is a U.S. citizen born abroad and has lived in the United States since 1978 after her family fled war and violence in Lebanon.  Mrs. Menendez has resided at her home in New Jersey since 1999 and is enmeshed in her local community.  Mrs. Menendez's closest familial relations live in the United States: her two adult children, her elderly father, her sister and her sister's family, and her husband Robert Menendez.   As discussed at sentencing, Mrs. Menendez is actively involved in the care of her father.  *Id*. at 23.

Furthermore, Mrs. Menendez's appeal is not motivated by delay.  Rather, Mrs. Menendez has vigorously defended herself since the indictment was unsealed, and the purpose of her appeal is to secure a reversal of her conviction or, at the very least, a new trial in which she can mount a suitable defense with her attorney of choice.  Whether a defendant's appeal is solely for the purposes of delay is often linked to whether the issues on appeal raise a substantial issue.  *United States v. Santiago*, 695 F. Supp. 1490, 1492 (S.D.N.Y. 1988) ("[W]here there exists no particular evidence that the stay is sought only for delay—this Court's determination of whether the request for a stay is merely a delay tactic is tied to its determination of whether the issues to be raised on appeal are substantial and whether they would likely result in reversal.").

As described below, Mrs. Menendez submits substantial appellate arguments, which if accepted will require—at minimum—a new trial.  *See United States v. Hart*, 906 F. Supp. 102, 105 (N.D.N.Y. 1995) (granting bail pending appeal where appeal was not for delay, but was "rather taken in a good faith belief in defendant's innocence and the merits of her arguments" and "the defendant at no time has admitted her guilt and seems sincere in her belief that she is innocent").  Thus, the Court should conclude that Mrs. Menendez's appeal is not for the purpose of delay, and that Mrs. Menendez satisfies the second *Randell* element.

## II.  MRS. MENENDEZ RAISES SUBSTANTIAL QUESTIONS THAT ARE LIKELY TO RESULT IN A NEW TRIAL

### A.  Mrs. Menendez's Sixth Amendment Claim Raises a Substantial Question

The constitutionality of the Government's unprecedented charging strategy, culminating in Mrs. Menendez's loss of her chosen counsel, presents a paradigmatic "substantial question."  A "substantial question of law or fact" need only be "one of more substance than would be necessary to a finding that it was not frivolous"—in other words, "a 'close' question or one that very well could be decided the other way."  *Randell*, 761 F.2d at 125 (internal quotations and citation omitted).

This does not require the "trial court to certify that it is likely to be reversed."  *Id.* (internal quotations and citation omitted).  Even where the court has thoroughly addressed and dismissed defendant's appellate arguments, that is not a bar to finding that non-frivolous questions merit bail pending appeal.  *See United States v. Scott*, No. 17-CR-630-ER, 2024 WL 1676633, at *3 (S.D.N.Y. Apr. 18, 2024) (granting bail pending appeal and rejecting government's arguments that defendant's appellate issues were already "litigated and decided against" him).  Indeed, appeals may raise substantial questions even if success on appeal is "doubtful" but "not impossible." *United States v. Kaufman*, No. 19-CR-0504, 2021 WL 8055691, at *3 (S.D.N.Y. Oct. 27, 2021); *see also Scott*, 2024 WL 1676633, at *3 (granting motion for bail pending appeal based on allegations of perjured testimony, even where court was "quite doubtful that [defendant] will obtain a reversal or new trial," but questions were not "frivolous"); *Silver*, 203 F. Supp. 3d at 380 (finding substantial question and granting bail pending appeal where defendant challenged jury instructions in light of recent controlling authority, even though defendant's case was "factually almost nothing like" the intervening case).

Mrs. Menendez's appeal raises, for the first time, whether a Government-created conflict that forces the withdrawal of a criminal defendant's longstanding attorney gives rise to a Sixth Amendment violation. As set forth in Mrs. Menendez's Brief, the Government's conduct throughout Mrs. Menendez's prosecution and trial unjustifiably interfered with her right to counsel, unlawfully depriving her of crucial Sixth Amendment rights. *See* Exhibit A.

The Second Circuit has repeatedly cautioned against such interference. For instance, in *United States v. Stein*, the court held that the government violated the defendants' Sixth Amendment rights when it pressured their employer to change its policy regarding advancement of legal fees, precluding multiple defendants from retaining counsel of their choosing. 541 F.3d 130, 144–47, 156–58 (2d Cir. 2008); *accord Luis v. United States*, 578 U.S. 5, 12 (2016) (holding that Sixth Amendment precludes pretrial restraint of a criminal defendant's legitimate, untainted assets needed to retain counsel of choice). This Circuit has also observed that the introduction of attorney statements at trial implicates a defendants' right to chosen counsel and results in "Hobson's choices" that may "seriously impair the defense." *United States v. McKeon*, 738 F.2d 26, 32 (2d Cir. 1984).

In violation of these norms, the Government manufactured the need for Mr. Schertler to become a sworn witness and created an unwaivable conflict between Mrs. Menendez and her longstanding counsel. The Government chose to have at least eight prosecutors attend the August 2023 Proffer and no law enforcement agents or non-attorneys from the U.S. Attorney's Office. In a critical misstep, the Government then chose to seek obstruction charges based in part on statements made during the August 2023 Proffer when it *knew that the only witness it would call at trial regarding those statements was Mrs. Menendez's own counsel.*

7

The obstruction charges prompted the Court to hold a *Curcio* hearing to address what the Government initially described as a potential conflict between Mrs. Menendez and her then-counsel. But that potential conflict ripened into a sworn witness problem when the Government stated, unequivocally, that it would call Mr. Schertler to testify. The *Curcio* hearing was thus premised on the assumptions that (1) Mr. Schertler was going to be a sworn witness, and (2) the parties would reach an anonymized stipulation regarding Mr. Schertler's testimony. But no stipulation was reached, and Mrs. Menendez lost her longtime counsel—not pursuant to formal disqualification proceedings, but by fiat through the Government's mismanagement of the conflict it had created.

Having spurred this drastic outcome, the Government then unilaterally decided that it would no longer call Mr. Schertler as a witness at Mrs. Menendez's trial. Even though the *Curcio* proceeding and Mr. Schertler's subsequent withdrawal turned entirely on the Government's representation to this Court that it "would intend to call Mr. Schertler as a witness absent the ability to reach an anonymized stipulation," *Curcio* Hearing Tr. 5, the Government *never* updated the record appropriately regarding Mr. Schertler's status as a witness. This was a violation of its duty of candor and an abdication of its responsibilities to the tribunal.

The Government's haphazard treatment of the attorney conflict cannot be analyzed through the lens of standard disqualification rules and procedures. Here, the Government never submitted a formal motion for disqualification but rather effected a *forced withdrawal* through its missteps and representations. The dearth of applicable Second Circuit case law addressing this unprecedented scenario easily renders the basis of this appeal a "close question." *Randell*, 761 F.2d at 125.

8

The central question of whether the Government's conduct, in the aggregate, violated Mrs. Menendez's right to counsel is undoubtedly substantial. Mrs. Menendez's appeal poses novel, critical questions about the constitutionality of the Government's extraordinary charging strategy and subsequent abdication of its duties. Other courts have found such significant questions implicating fundamental constitutional rights to be bases for bail pending appeal. *See, e.g.*, *United States v. Hall*, 765 F. Supp. 1494, 1498–99 (S.D. Fla. 1991) (finding defendant raised substantial question when alleging Sixth Amendment ineffective-assistance claim based on an attorney conflict arising from joint representation and counsel's failure to convey a cooperation offer); *United States v. Price*, 611 F. Supp. 502, 506 (S.D. Fla. 1985) (finding a substantial question concerning alleged violations of defendant's Fifth and Sixth Amendment rights, where trial court evidentiary rulings prevented meaningful cross-examination of government witnesses and restricted the defendant's ability to present a complete defense); *United States v. Scheur*, 626 F. Supp. 2d 611, 617–18 (E.D. La. 2009) (finding that defendants raised substantial constitutional question regarding whether prosecutorial remarks during closing argument improperly commented on defendants' exercise of their Fifth Amendment right to remain silent).

Mrs. Menendez's appeal cannot be readily dismissed under existing Second Circuit precedent, which reinforces the need for release pending the court's decision. *See* Sent'g Tr. at 78, 86, *U.S. v. Blaszczak*, No. 17-CR-00357-LAK (S.D.N.Y.), Dkt. Entry 412 at 78:7–10 (filed Oct. 5, 2018) (granting bail application where appeal raised novel issues lacking "established Second Circuit precedent clearly squarely on point").

The Sixth Amendment deprivation cannot be explained away by the fact that Mr. Schertler may have remained an unsworn witness up until the end of trial. While disqualification is virtually mandatory when an attorney acts as a sworn witness, the parties may agree "to limit inquiry to

9

avoid the problem of counsel as an unsworn witness." *United States v. Kliti*, 156 F.3d 150, 156 n.7 (2d Cir. 1998); *see also United States v. Jones*, 900 F.2d 512, 520 (2d Cir. 1990) (finding no conflict existed where evidence, of which counsel had knowledge, was admitted in redacted form, and thus jury was unaware of counsel's involvement and would not place undue weight on evidence). Thus, even if Mr. Schertler had been an unsworn witness throughout Mrs. Menendez's trial, the Government nonetheless had a duty to update this Court as to this transformation of the conflict, allowing the parties to resolve the unsworn witness issue or inviting this Court to enter a formal disqualification order.

Further, neither the law of waiver or forfeiture can properly resolve the inquiry. Regarding forfeiture, the Second Circuit has explicitly noted that it has yet to resolve whether forfeiture rules even apply to a structural error such as deprivation of the right to counsel. *See United States v. Cain*, 671 F.3d 271, 292 (2d Cir. 2012).

As for waiver, any waiver by Mrs. Menendez of her right to chosen counsel during the *Curcio* hearing was predicated on the Government's representation that they would be calling Mr. Schertler as a witness. This turned out not to be true. In this situation, when the conflict with counsel is controlled by the Government—which decides *unilaterally* how to present its evidence and whether it will actually call counsel to testify—rigorous procedural safeguards are needed to secure a valid waiver of the right to chosen counsel. When similar constitutional rights are waived by criminal defendants, courts take pains to ensure those waivers are knowing and voluntary. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (describing colloquy requirements before permitting defendant to proceed *pro se*); Fed. R. Crim. P. 23(a) (requiring written waiver, consent by government, and court approval before defendant can waive right to jury trial); *United States v. Pouryan*, 628 F. App'x 18, 20 (2d Cir. 2015) (recommending colloquy on the record for jury trial

10

waivers); Fed. R. Crim. P. 11(b)(1) (imposing similar requirements for *nolo contendere* and guilty pleas).  Here, while there was an initial *Curcio* hearing, there clearly should have been an updated and specific disclosure to both the Court and Mrs. Menendez when the fundamental nature of the conflict had changed.  Without that updated disclosure, with appropriate processes to follow, Mrs. Menendez could not have knowingly and validly waived her right to chosen counsel.

### B.    A Decision in Mrs. Menendez's Favor Would Likely Necessitate a New Trial

The basis of Mrs. Menendez's appeal goes to the heart of the fairness of her trial.  The erroneous deprivation of the right to counsel of choice has "consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifying as a structural error."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (cleaned up).  A structural error is a class of constitutional errors that "defy analysis by 'harmless error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself."  *Id.* at 148 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)).  Such an error "requires automatic reversal and is not subject to harmless error analysis because it involves a deprivation of a constitutional protection so basic that in its absence, 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"  *Bentley v. Scully*, 41 F.3d 818, 823 n.1 (2d Cir. 1994) (quoting *Fulminante*, 499 U.S. at 310).  Therefore, if the Second Circuit finds on appeal that Mrs. Menendez was erroneously deprived of her right to the counsel of her choice, Supreme Court precedent requires the grant of a new trial.

Accordingly, Mrs. Menendez's appeal presents the quintessential substantial question that warrants her release pending appeal under 18 U.S.C. § 3143(b).

11

### C.    Additional Substantial Questions Will Be Raised on Appeal

While Mrs. Menendez's Sixth Amendment claim provides sufficient grounds to grant her release, her appeal presents three additional substantial questions, *inter alia*, for review.

*First*, Mrs. Menendez challenges the Government's use of highly prejudicial summary chart evidence and argues that their admission exceeded the bounds of Federal Rule of Evidence 1006. Thus, the Second Circuit will address critical evidentiary limitations on a key government trial tactic, determining whether charts that weave together disparate communications and present them in summarized form operate as early summations or are otherwise impermissibly argumentative. And because the Government's reliance on the charts unfairly implied a *quid pro quo*—the heart of the Government's case—a decision in Mrs. Menendez's favor would require vacatur of the conviction on all counts.

*Second*, Mrs. Menendez challenges the sufficiency of the evidence on all counts based, in part, on a fundamental misapplication of the "official acts" requirement as interpreted in *McDonnell v. United States*, 579 U.S. 550, 571–74 (2016). The Government presented a series of informal conversations and statements, untethered to any requests for official action, to serve as the basis of its *quid pro quo* theories. This case stretched *McDonnell* far beyond its terms. Should the Second Circuit decide to reign it in, the outcome would be reversal for failure to prove any *quid pro quo*.

*Finally*, this appeal raises significant questions about what conduct can create constitutionally sufficient grounds for venue. This case was tried in the Southern District of New York despite the vast majority of the relevant conduct occurring in New Jersey or Washington, D.C. The Government grasped at straws to build a connection to New York, and a finding that venue was improper would require reversal on all counts.

12

## **CONCLUSION**

For these reasons, Mrs. Menendez respectfully requests that this Court order her release on bail pending appeal, subject to all current conditions of release, and stay the restitution and forfeiture orders pending appeal.  Given Mrs. Menendez's surrender date of July 10, 2026, we also respectfully request that the Court decide this motion on a schedule allowing time for either party to seek review by the Second Circuit, if needed, before July 10, 2026.

Dated: April 14, 2026

Respectfully submitted,

By: /s/ Sarah Krissoff
Sarah R. Krissoff, Esq.
Emma Scully, Esq.
Andrew Vazquez, Esq.
COZEN O'CONNOR
3 WTC
175 Greenwich St.
New York, N.Y. 10007
(212) 908-1388

*Attorneys for Defendant Nadine Menendez*

13